# KEANE *v.* BRYGGER.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 94. Argued December 4, 5, 1895. — Decided December 23, 1895.

A voluntary relinquishment of his entry by a homestead entryman made in 1864 was a relinquishment of his claim to the United States, and operated to restore the land to the public domain.

Prior to 1864 H. made a homestead entry of the land in controversy in this action. In February, 1864, he relinquished his right, title, and interest in the same. In March, 1864, the University Commissioners of Washington Territory, under the act of July 17, 1854, c. 84, selected this as part of the Territory's lands for university purposes, and on the 10th day of that month conveyed the tract to R., who, on the 4th of April, 1876, conveyed it to B. *Held,* that the title so acquired should prevail over a title acquired by homestead entry in October, 1888.

THIS was an action for the possession of certain parcels of land in Washington Territory, brought in its third judicial district. The land constituted the southwest quarter of the northwest quarter of section eleven in township 25 north, of range 3 east, in King County, in that Territory.

The complaint alleged that one Johan Brygger was, in his lifetime, the owner in fee and entitled to the possession of the land described; that he died in that county and Territory on the 20th of November, 1888, the owner in fee and entitled to the possession of the premises; that he left a last will and testament, which was admitted to probate in the probate court of King County, in that Territory, on the 20th of December, 1888; that the plaintiff, Anna Sophia Brygger, was appointed executrix, and the plaintiff, Ole Schillestead, was appointed executor of the estate of decedent on the 20th day of December, 1888, and that both qualified and entered upon the discharge of their duties. The plaintiffs also alleged that the real property described was assets in their hands for the payment of debts and legacies and expenses of administration, and that they had been in possession of the same since their appointment, and that the decedent, at the time of his death, was in its possession, and had been in actual possession thereof for over ten years before his death; that a part of the dwelling-house of the decedent, in which his family resided, was on the property, and that there were on the land a large and costly barn and outhouses, and orchard and garden, and the same was surrounded with a fence, and was mostly improved. And the plaintiffs alleged that the defendant, on the 12th of February, A.D. 1889, opened the fences surrounding the land, and with servants and teams and lumber entered upon the same with the declared intention of building a house thereon and to claim the same, and announced his intention to hold the possession of all the described lands. They also alleged that Anna Sophia Brygger was not only executrix of the estate of said Johan Brygger, deceased, but the residuary devisee of all of his estate remaining after the payment of the legacies and bequests mentioned in the will of the decedent; that the plaintiffs' title to the land and the

claim to the possession thereof was as executors of the estate of Johan Brygger, deceased, and that the estate was unsettled, and that legacies, bequests, and expenses of administration were to be paid. That the defendant had threatened to continue the opening and breaking of the fences on the land, and to continue the hauling of lumber and other materials thereon, and to continue to enter the same by himself and servants, and to erect a house and other buildings thereon.

And the plaintiffs also averred that the orchard and garden and dwelling-house, outhouses, and barn were all thereby exposed to destruction or great damage by stock and the estate of Johan Brygger, deceased, to be greatly impaired; that the defendant was unable to answer in damages for the injury already done and that which was threatened by him, and that there was great danger that he would put the same into execution; and they asked for judgment for the recovery of the land and for an order restraining the defendant, his servants or agents, from interfering with their possession of the land or the improvements thereon, and restraining him or his servants from opening or breaking the fences or doing other damage thereto during the pendency of this litigation, and for their costs and disbursements to be taxed.

The complaint was filed on the 15th of February, 1889, and on the same day an order was issued by the court directing the defendant to show cause on a day named why a temporary restraining order should not be granted, and in the meantime enjoining him from opening or breaking down the fences enclosing the land, and from entering upon the same with wagons, teams, or otherwise, and from erecting a house or other structure thereon, and from interfering with the buildings or any of them upon the same.

On the 21st of February, 1889, the defendant filed an answer and counterclaim, protesting that the court had not jurisdiction over the subject-matter of the action, and, saving all his rights by reason of the want of such jurisdiction, yet for answer and defence, denied each and every allegation of the first and second paragraphs of the complaint, except the allegation as to the place and date of the death of Johan

Brygger; alleging that, as to the third paragraph, he had not sufficient knowledge or information upon which to form a belief respecting the allegations therein, and therefore denied each of them; and, answering the fourth paragraph, he denied that the real property therein referred to was assets in the hands of the plaintiffs or any of them for the payment of debts, legacies, and expenses of administration, or of any or either of said matters, or for any purpose whatever, or in any respect or manner whatever. He further denied that the plaintiffs had or that any or either of them had been in the possession of the real property since their or either of their appointment as executrix and executor respectively, as in the complaint set forth, if such appointment had been made, or at any time or at all, and alleged that if they had or any or either of them had been in such possession the same was at all times wrongful and unlawful and without any color of right. He further denied that Johan Brygger at the time of his death, or at any time or at all, was in possession of said real property, and alleged that if said Brygger ever was in such possession the same was at all times wrongful and unlawful and without any color of right. And also denied that Johan Brygger was in possession of said real property for over ten years before his death, or for ten years, or for any time, or at all, and alleged that if he ever was in such possession the same was wrongful and unlawful and without any color of right.

The defendant, further answering, alleged that if a part of the dwelling-house of Johan Brygger was on the said property the same was wrongfully and unlawfully placed there, and that if the barn, outhouses, orchard, and garden mentioned were upon the property, the same were and each of them was put there wrongfully and unlawfully, and without any color of right. And he denied that there was any fence surrounding the land, or that he opened fences surrounding the same, and alleged that the rails temporarily removed by him for the purpose of reaching the land had been wrongfully and unlawfully placed where they were, notwithstanding which he had restored the same to the position in which he had first found them.

And the defendant, answering the fifth paragraph, alleged

that he had not had sufficient knowledge or information upon which to form a belief respecting the allegations or any of them therein contained; wherefore he denied the same. And also denied that Johan Brygger ever had any title, legal, equitable, or otherwise, to the land or any part thereof, and denied that the estate of Johan Brygger had, or ever had, any right, title, interest, or claim in or to the land or any part thereof.

Answering the seventh paragraph of the complaint, the defendant denied that the orchard and garden and dwelling-house, outhouses, and barn therein mentioned were, or that any or either of them was, in the least exposed to destruction or damage by stock or otherwise, or to any injury or loss whatsoever by reason of anything done or intended or attempted by the defendant, and denied that the estate of Johan Brygger was thereby exposed in any manner to the least impairment or damage. And he further alleged that he had done and intended to do no damage whatsoever to any fence or fences on the land, if any there were, notwithstanding that the same, if any, had been wrongfully and unlawfully placed thereon without color of right.

Answering the eighth paragraph of the complaint, the defendant denied each and every allegation therein contained, and in particular that any injury had been done or threatened by him to any interest, property, or claim of the plaintiff, and denied that he had any intention to do such injury, and alleged that he was fully able to answer in damages for any injury which could or might arise from his occupation of the land.

And further answering the complaint, and as and for new matter constituting a first and separate defence thereto, the defendant alleged that on and before the 20th day of October, 1888, the land described in the complaint, and forty acres, according to the United States survey, was unappropriated public land of the United States; that on the date mentioned the defendant was the head of a family, over the age of twenty-one years, and was a citizen of the United States, and had never theretofore taken up or entered any public land of the United States under the homestead laws;

that on the date mentioned, being duly qualified, he tendered
at the United States land office in Seattle his application to
enter and appropriate the land described under the provisions
of the homestead laws; that he made application for his
exclusive use and benefit, and for the purpose of actual set-
tlement and cultivation, and not either directly or indirectly
for the use or benefit of any other person, and paid to the
United States the legal fees in such cases prescribed, and was
thereupon duly permitted to enter the land, and did on the
day mentioned enter the same; that his entry of the land
was thereupon duly made of record, and has ever since con-
tinued to be and now is a valid subsisting entry, and that six
months have not elapsed since the appropriation of the land
by him; and that neither Johan Brygger nor the plaintiffs,
nor either of them, ever had or now have any right, title, or
interest in the land or any part thereof.

To the fourth paragraph of the defendant's answer, the
plaintiffs replied and denied that the possession of Johan
Brygger, their testator, or their possession after his death,
was wrongful or unlawful, or without color of right, and
denied that the dwelling-house on the property described was
wrongfully and unlawfully placed there, or that the barn,
outhouses, orchard, and garden on the land were wrongfully
or unlawfully placed there; also denied that the rails removed
by the defendant had been wrongfully or unlawfully placed
where they were; denied also that the defendant was not
doing damage, and denied that he did not intend to do any
damage to the fence or fences on the land.

In reply to the second defence and counterclaim, they
denied that the land described in the first paragraph of the
defence or counterclaim, being the same as that described in
the complaint, was, on and before the 20th day of October,
1888, unappropriated and public land of the United States,
and denied that the same had been unappropriated and public
land since the 10th day of March, A.D. 1864.

In reply to the third paragraph of the defence, the plaintiffs
denied that the defendant, on the 20th day of October, A.D.
1888, or at any other time, duly tendered to the United States

land office in Seattle or elsewhere his application to enter or take up or appropriate the land under the provisions of the homestead law.

In reply to paragraph four they denied that the defendant was duly permitted to enter the land under the provisions of the homestead law; and denied that his application or entry was duly made of record in the land office mentioned; and that the same had been since or continued to be and then was a valid or subsisting entry and appropriation of the land. And in reply to the seventh paragraph of the defence, they denied each and every allegation of the same.

On the 9th of August, 1890, the defendant requested the court to find the following facts:

1st. That on the 14th day of February, 1864, and on the 10th day of March, 1864, and at all times in February and March, 1864, the land in controversy was included in homestead entry No. 204, of Lemuel J. Holgate, and was included in and covered by his homestead entry until the 20th day of December, 1871. 2d. That on the 14th day of February, 1864, and on the 10th day of March, 1864, and on the 14th day of March, 1864, and at all times in February and March, 1864, Holgate was living upon the land as a homestead settler and entryman, and improving the same for the purpose of making it his permanent home, and did not leave the same until about December, 1864. 3d. That on the 4th day of April, 1889, the receiver of the United States land office at Seattle, Washington, transmitted to the defendant by unregistered mail, in care of his attorney, a letter to the effect that the Commissioner of the General Land Office held defendant's entry for cancellation, which letter was the first and only notice of the holding or decision given to defendant. 4th. That by No. 77 of the rules of practice in cases before the district land offices, the General Land Office, and the Department of the Interior in force at the time, the defendant had thirty (30) days, together with ten (10) days for transmission through the mail to him and from him, from the 4th day of April, 1889, for filing, either in the Seattle land office or in the office of the Commissioner of the General Land Office, a motion for re-

hearing or review of the holding or decision of the Commissioner of the General Land Office ; that within the period so allowed by that rule the defendant did file both in the Seattle land office and in the office of the Commissioner of the General Land Office a motion for rehearing and review of the holding and decision. 5th. That before the period had elapsed and on the 22d day of April, 1889, the Secretary of the Interior certified the land to the University of the Territory of Washington, which certification was subsequently entered of record under the seal of the Commissioner of the General Land Office on the 9th day of May, 1889, and before the period had elapsed within which defendant could legally file his motion for rehearing and review. 6th. That by reason of the certification of the land department the United States lost jurisdiction over the land. 7th. That by the loss of jurisdiction the defendant had no further remedy in the land department. 8th. That the complaint in this action was filed in this court on the 15th day of February, 1889, prior to the time of the certification and before the time had elapsed for the defendant to move for such rehearing and review, and before the land department had lost jurisdiction over the land, and while the title to the land was still in the United States. 9th. That on the 11th day of January, 1861, the legislative assembly of the Territory of Washington passed an act appointing Daniel Bagley, John Webster, and Edmund Carr a board of commissioners to select, locate, and dispose of lands reserved for university purposes in the Territory of Washington by the act of Congress of July 17, 1854.

And the defendant requested the court to find the following conclusions of law : 1st. That by reason of the homestead entry No. 204 of Lemuel J. Holgate remaining uncancelled on the records of the land department until December 20, 1871, the land did not become vacant public land of the United States and subject to selection for the University of the Territory of Washington until the last-named date. 2d. That upon that date it became vacant public land of the United States, and open to preëmption or homestead settlement, and was so vacant when the defendant filed his homestead entry

thereon. 3d. That by defendant's homestead entry the land was appropriated to him. 4th. That defendant's homestead entry was unlawfully cancelled. 5th. That the land was unlawfully certified by the land department to the Territory of Washington, and no right passed to the plaintiffs or to their testator, his grantors, by such certification. 6th. That the legal title to the land conveyed by that certification inures to the benefit of the defendant, and the plaintiffs hold the same in trust for him. 7th. That the defendant is entitled to a decree for the conveyance of the legal title to him, and for the dismissal of this action, and for the dissolution of the temporary restraining order heretofore issued in this cause.

The issues involved in this cause came on to a hearing on the 18th and 19th days of June, 1890, in the Superior Court of King County, State of Washington, upon the pleadings and evidence taken, and the court found that said tract of land was selected by the Territory of Washington, through its university commissioners, on the 10th day of March, 1864, as university lands, and that the university commissioners did, upon that date, execute and deliver to one John Ross a deed to the land in controversy for the consideration of two hundred and forty dollars, paid by him to them; that on the 4th day of April, A.D. 1876, Ross sold and conveyed the lands by deed to Johan Brygger, the testator herein, and that both of the deeds were duly recorded; that prior to the year 1864 one Lemuel Holgate had made a homestead filing on the land in controversy, but that he had relinquished his right, title, and interest in and to the same in the month of February, 1864; that the university commissioners filed a list of such selections in the local land office in the Territory, which list was known and recognized in the land department of the government as list number two, and that the same was filed in the proper local land office in March, 1867, and that in that list the land was located and selected for university purposes; that on the 22d day of April, A.D. 1889, the Secretary of the Interior issued his certificate under the act of Congress approved March 14, 1864, after due proof, including the land in controversy, and approving the same as a grant in fee simple

to the Territory, and to its vendees, under and by virtue of said act; that on or about October 20, A.D. 1888, the plaintiff in error entered his homestead filing in the land office at Seattle, on the land in controversy, and that in February, 1889, he took up his residence on a portion of the land and erected a building on the same; that prior to the erection of that building defendants in error notified him of their rights, claims, and titles to the land.

*Mr. James K. Redington* and *Mr. Samuel Field Phillips* for plaintiff in error. *Mr. Frederic D. McKenney* was on the brief.

*Mr. Charles K. Jenner* for defendant in error. *Mr. Louis Henry Legg* was on the brief.

MR. JUSTICE FIELD, after stating the facts as above and referring to the act of Congress mentioned, reserving to the States, respectively, certain lands for university purposes and authorizing each of the States named to appoint commissioners for the selection and location of such lands, delivered the opinion of the court, as follows:

The contest between the parties to the premises in controversy arises from a claim made by each of them to a segregation of a portion of such lands for a homestead under the act of Congress of July 17, 1854, c. 84, 10 Stat. 305.

By the fourth section of that act it is provided: "That, in lieu of the two townships of land granted to the Territory of Oregon by the tenth section of the act of eighteen hundred and fifty, for universities, there shall be reserved to each of the Territories of Washington and Oregon two townships of land of thirty-six sections each, to be selected in legal subdivisions, for university purposes, under direction of the legislatures of said Territories, respectively."

On the 11th day of January, 1861, the legislative assembly of the Territory of Washington passed an act appointing a board of commissioners to select, locate, and dispose of lands

reserved for university purposes in the Territory of Washington by the act of Congress quoted.

It appears, from an examination of the proceedings, read in connection with the legislation of Congress and the action of the commissioners of the State, that a doubt was created as to the legality of the conveyance by the commissioners of the land in controversy, to John Ross, from the fact that previous to that conveyance one Lemuel J. Holgate had filed upon and entered, as a homestead, the land described, which was not cancelled until December 20, 1871. It appears that Holgate executed a relinquishment of his homestead entry upon the land previous to the execution by the commissioners of their conveyance of the same to John Ross. That relinquishment was executed and delivered in February, 1864, and the selection of lands by the university commissioners was on the 10th day of March, 1864. But it is contended by the plaintiff that the relinquishment was in effect a quitclaim from Holgate to Ross, as there was no provision for a voluntary relinquishment prior to May 14, 1880, and that the only way by which lands once filed on under the homestead acts could be restored to the public domain was either by lapse of time or by contest.

But this position is not sustained by the judgment of the Secretary of the Interior, nor was it in harmony with the rulings of the land department. In its legal effect the relinquishment by Holgate was to the United States.

Section 1 of the act of May 14, 1880, c. 89, 21 Stat. 140, provides "that when a preëmption, homestead, or timber culture claimant shall file a written relinquishment of his claim in the local land office, the land covered by such claim shall be held as open to settlement and entry without further action on the part of the Commissioner of the General Land Office;" and, as held by the Commissioner, the effect of the law was to give authority to local land officers to cancel the entry at once without awaiting the action of the Commissioner of the General Land Office as had been preceding that time its custom.

As stated by the Commissioner, it had previously been the

uniform practice of the land department to cancel entries on the voluntary relinquishment of the entryman, and it would be a strange doctrine to announce that a party did not have the right to relinquish any right that he had to or in any property, and that it was the intention of the government to compel its citizens to go to the expense and delay of a contest to extinguish an interest of another citizen who was willing to make a disclaimer of that interest.

He very justly remarks that the object of the homestead law was to furnish homes to the citizens of the government and to encourage the settlement of its public domain, and to make the accession of these homes as easy and cheap as possible, and not to wantonly and senselessly place obstructions in the way of such acquisition. He observed that it is the policy of the government to protect the rights of the homestead claimant while he is endeavoring to comply with the requirements of the law; but when the government becomes satisfied that there has been an abandonment of such right by the applicant, the entry will be cancelled, and the land will be subject to the reëntry of some one who will comply with the law, and that the question whether or not there has been an abandonment must be determined, like every other question of the kind, by evidence, and there certainly could be no higher or more convincing testimony than the testimony of the applicant himself, by a formal relinquishment of his rights to the land endorsed on his original receipt and filed in the land office. Secretary Teller well said that the fact that Holgate's relinquishment was not returned to and noted on the records of the land office until 1871 showed irregularity on the part of the local officers but could not affect the rights of the university.

It appearing, therefore, that the action of the board of university commissioners, in conveying to John Ross the land involved in this case, who subsequently conveyed it to Johan Brygger, under whose will the appellees claim title to the same, was in conformity with the act of Congress of July 17, 1854, 10 Stat. 305, § 4, and the amendatory act of March 14, 1864, c. 31, 13 Stat. 28, this court finds no error in the decision

of the Supreme Court of the State of Washington, and its judgment is hereby

*Affirmed.*