(77 App. Div. 437.)

## BELL v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 19, 1902.)

1. MUNICIPAL CORPORATIONS—PURCHASE OF WHARVES.
   Under Act 1871, authorizing the department of docks of New York City to acquire title to docks, where the city had no title, either by agreement or condemnation, the city, through its department of docks, has authority to purchase the interest of a person in a wharf.

2. SAME—GRANT OF LAND—RESERVATION—ELECTION.
   By Laws 1813, c. 86, the city of New York was vested with control of the water front, including authority to construct and regulate wharves and slips; and it was provided that it might lay out streets and wharves along the East river, and that the proprietors of the adjoining uplands, on filling in so as to construct such street, should become owners in fee of the intermediate space. In 1817 the owner of the uplands adjoining a portion of the river was granted by the city the land "to be gained out of the East river, contiguous to his premises," "reserving, nevertheless, so much of wharfage advantages, etc., as might accrue from so much of the street as might be appropriated by the city for the purpose of forming a public slip or basin." In 1831 the common council adopted the report of a committee recommending the construction of two piers which did not adjoin the grantee's premises. *Held*, that piers could not be constructed by the city adjoining the premises, as the city should be deemed to have exercised its rights when it determined on the first piers in 1831.

3. SAME—CONSTRUCTION OF RESERVATION.
   The reservation or exception in the grant could not be construed as giving the grantor the right to appropriate the entire bulkhead opposite the premises in question, as such construction would be unreasonable.

4. SAME—REPUGNANCY.
   It could not be construed as giving the city a right to the entire bulkhead, as the exception necessarily implied the granting of some estate.

5. SAME—UNCERTAINTY.
   Construed as an exception, it would be void for uncertainty, in that it covered nothing then in existence, or capable of being identified and omitted from the conveyance.

6. SAME—ESTOPPEL.
   The property in question was leased by the executors of a party claiming under the grantee from the city, with a proviso in the lease for a reduction in the rent in case the city should take the bulkhead for public purposes. *Held*, that the admission in the lease did not estop the executor from claiming that the city had exercised its reservation in the determination of 1831; the city not having been a party to the lease, and it not appearing that the executor recognized its rights.

7. SAME—ABANDONMENT OF RESERVATION.
   The city having, subsequent to the granting to the owner of the premises involved, authorized the construction of a pier adjoining such premises at the expense of the owners, such conduct should be deemed

to have been a waiver or abandonment on the part of the city of the right to locate any public slip or basin at that point.

**8. SAME—PRESCRIPTION.**

Where one has constructed a pier so that part of it is on lands under water which belong to the state, the construction being under a claim of right as against the state, the maintenance of the pier for more than 20 years gives the owner a prescriptive right.

**9. SAME—SINKING-FUND ORDINANCE.**

The sinking-fund ordinance of New York City, adopted in 1844, vested the sale and disposition of real property, including grants of land under water, in the commissioners of the sinking fund; and the construction of bulkheads and piers was inhibited, except with the consent of the common council. *Held* that, where a pier was constructed by the owners of premises adjoining the East river, the construction being with the consent of the common council, the same was authorized, inasmuch as the sinking-fund ordinance did not apply to grants for the construction of piers by abutting proprietors, and the consent of the common council should be regarded as having been given in conformity to the sinking-fund ordinance.

Van Brunt, P. J., dissenting.

Submission of controversy between Mary Bell and the city of New York. Judgment for plaintiff.

The plaintiff seeks the specific performance of an agreement in writing between her and the defendant by its department of docks, bearing date the 4th day of January, 1900. The agreement recites, among other things, that the plaintiff is the "proprietor of all the wharfage rights, terms, easements, and privileges, etc., appertaining to the bulkhead" on the southerly side of South street, between Jefferson and Clinton streets, beginning at a point about 96 feet easterly of the easterly line of Jefferson street, and running thence easterly to a point about 120 feet westerly from the westerly line of Clinton street, produced, "including all right and title to the wharfage rights, terms and easements, emoluments and privileges, appurtenant to pier (old) 47, East river, not now owned by the city of New York, and all right, title, and interest in and to said pier, or any portion thereof, not now owned by the city of New York"; that the city, by its board of docks, subject to the approval of the commissioners of the sinking fund, is authorized to acquire by purchase "wharf property in said city, and all rights appertaining thereto not now owned by the corporation"; that the city "is desirous of acquiring said wharfage rights, easements, and privileges heretofore described, not now owned by the city," in accordance with a resolution of the board of docks declaring its desire to acquire said rights and property, reciting that it appears that the plaintiff is the "owner in fee simple of the above-described premises, together with all hereditaments, including riparian and wharfage rights," containing an offer on the part of said board to purchase the same, "and to pay for a good and sufficient title thereto, free from all encumbrances," the sum of $175,000, providing for service of the resolution on the plaintiff, and requesting an answer in writing within ten days "whether she will sell the said riparian and wharfage rights and interests" for the price offered, and declaring that, if such answer be not given, it should be deemed that no price could be agreed upon; and then follow the terms of the contract, the material provisions of which are as follows: The plaintiff agrees to sell and convey to the defendant, by good and sufficient deed, "all her right, title, and interest in and to the wharfage rights, terms and easements, and privileges, etc., appertaining to" said bulkhead, "including all right and title to the wharfage rights, terms and easements, emoluments and privileges, appurtenant to pier (old) 47, East river, and all right, title, and interest in and to said pier, or any portion thereof," for the sum specified in said offer. The agreement recites that it is the essence of the contract that the plaintiff is to convey or cause to be conveyed "good title to the several rights, titles, and interest in and to the said wharfage rights, etc., appurtenant to one hundred (120) and twenty feet of bulkhead and to

said pier (old) 47, East river, with the rights to the lands under water and riparian and other rights, if any, in front thereof and connected therewith, not now owned by the city of New York or by the people of the state of New York"; that the defendant agrees "to purchase the right, title, and interest of the said party of the first part of, in, and to said wharf property" for the consideration before specified. The agreement was subject to the approval of the commissioners of the sinking fund, and they approved it. The defendant claims that under an exception or reservation contained in a grant from the city of New York, being the plaintiff's source of title, it is entitled to the possession of the premises for the purposes of a "public basin," the purpose for which, according to plans on file for improving the water front, it is proposed to acquire plaintiff's interests.

In 1813 the city owned all the land along and under the East river, from high-water mark to a point 400 feet outside of low-water mark, except where it had granted the same. It acquired title from the crown under the Dongan charter and by the Montgomery charter. By chapter 86 of the Laws of 1813 the city was vested with the control of the water front, including authority to construct and regulate the wharves and slips, and to take, by prescribed proceedings, the ground of individuals for those purposes. It was further provided by said act that the city might lay out "regular streets and wharves seventy feet wide along the East river"; that the proprietors of the adjoining uplands should construct said streets or wharves according to the plan adopted by the corporation, and fill in any intervening space between their respective holdings and said streets or wharves at their own expense, and should become the owners in fee of the intermediate space upon filling and leveling the same (section 221); and, if they did not perform the work within the time fixed, the corporation was authorized to do it, and recover the expense from them (section 222); and the expense was made a lien on the adjoining premises (section 223); that the city might direct the construction of piers at the expense of the proprietors of the adjoining lots, and upon their default to either build the piers itself and collect the wharfage, or grant the right to build the piers and collect the wharfage to any person, "in fee or otherwise" (section 224); that the corporation might grant to the adjoining proprietors a common interest in piers according to the breadth of their respective lots located within such limits, as should be deemed proper (section 225); that it might also, at its own expense, "cause such and so many other public basins to be formed and completed" as might be deemed necessary, and to receive to its own use the "slippage or wharfage arising from the same." "Provided that nothing herein contained shall be construed * * * to interfere with any private property or right or privilege held under grants of the said mayor, aldermen and commonalty or otherwise" (section 228); that it might "enlarge any of the slips in the said city," and, "upon paying one third of the expense of building the necessary piers and bridges, shall be entitled not only to the slippage of that side of the said piers which shall be adjacent to such slips respectively, but also to one half of the wharfage to arise from the outermost end of said piers" (section 230); that if any adjoining proprietors should refuse to join in the building of piers, the corporation might join with those willing to do their part, and share in the wharfage accordingly (section 231). Failure on the part of the adjoining proprietors to build the piers or contribute to the expense within the time prescribed by a notice to be published for six weeks was to be deemed a refusal to comply with the direction of the corporation. Section 232.

In 1817 one Henry Rutgers was the owner of the uplands adjoining the East river for the two blocks from Rutgers street to Clinton street, Jefferson street intersecting his holdings. At that time high-water mark was for the most part above Water street, but Rutgers had obtained a prior grant from the city of the title from high-water mark to the northerly line of Water street. No definite plan for the improvement of the water front in this vicinity had been adopted at that time. By indenture dated May 1, 1817, the corporation granted to him, as authorized by Revised Laws of 1813, already mentioned, the lots or land to be "gained out of the East river," bounded northerly by the south side of Water street, easterly by the west

side of Clinton street, southerly by the northerly side of South street, and westerly by the east side of Rutgers Slip, as the same were designated on a map annexed, excepting so much as would be necessary to extend Jefferson street to South street. The grantee covenanted that on three months' notice he would build the "wharves or streets" adjoining said premises, as designated on the map, and keep the same in repair, and that they should be "public streets or highways." This agreement obligated the grantee, when so required, to fill and construct Water and South streets, and to extend Clinton, Jefferson, and Rutgers streets from Water to South street. The grantor covenanted and agreed that the grantee, his heirs and assigns, on performance of the covenants and conditions on his part, "shall and lawfully may from time to time and at all times forever, hereafter, fully have, enjoy, take, and hold to his and their own proper use all manner of wharfage, cranage, advantages, and emoluments growing or accruing by or from that part of the said wharf or street called 'South Street,' which lies opposite to the hereby granted premises, and fronting on the East river, excepting and reserving, nevertheless, so much of the said wharfage, cranage, advantages, and emoluments as may accrue from so much of South street as may be hereafter appropriated by said parties of the first [part] for the purpose of forming and making a public slip or basin after the said public slip or basin shall be formed and made."

In 1831 the attention of the common council was drawn to the insufficiency of dock facilities along the East river. It was proposed by the committee to whom the matter had been referred to form a "basin or slip" at the foot of Clinton street by two piers 130 feet long, as shown on a map presented with the report of the committee. The map shows the easterly pier at the foot of Clinton street, and the other about 80 feet westerly toward Jefferson street. The report further proposed that the corporation bear one-third of the cost of the easterly pier and all of the cost of the westerly pier, reciting that the common council had "reserved the waters adjacent for public purposes." The resolution recommended to carry out the report was adopted. By deed dated May 1, 1832, the executors of said Rutgers conveyed to one Henry M. Bool 144 feet of the lands abutting on South street opposite the bulkhead or wharf and pier. By that time the lots had not been filled up, and the conveyance was made expressly subject to the exception or reservation and other covenants and conditions in the deed to Rutgers above set forth. By a resolution adopted the preceding March, the common council had granted permission to said Bool (as if he already owned an interest in the premises) and others to sink a bulkhead on the south line of South street from Rutgers street to Clinton street, and fill up the water lots agreeably to the Rutgers grant aforesaid. Pursuant to this resolution, Bool and the other proprietors subsequently sunk the bulkhead, built the wharves or street, and filled up the water lots at their own expense, agreeably to the conditions of the grant. The proprietors of the adjacent land, easterly of Clinton street, were given an opportunity to join in the construction of said pier to be built at the foot of Clinton street according to said provisions of the Laws of 1813, but none joined, and the city constructed that pier at its own expense in 1832. If the westerly pier had been constructed as originally proposed, it would have formed a slip or basin 80 feet wide by 130 feet long, all easterly of the locus in quo. But on the 14th of January, 1833, the street commissioners proposed to the common council to change the plan by locating the westerly pier at the foot of Jefferson street, so as to form a "capacious basin." The change was adopted, and the pier built solely at public expense, without giving adjacent owners the opportunity to join in its construction afforded by the original plan. These two piers, the one at the foot of Jefferson street and the other at the foot of Clinton street, are known as pier 48 (old number) and pier 46 (old number), East river, respectively. The city has maintained them, and has received the entire wharfage or profits therefrom. In 1842 the annual quitrent reserved in the Rutgers grant was released. The city likewise in 1833 constructed pier 44 (old number), East river, 130 feet long, at the easterly side of Rutgers Slip, after giving the adjacent owners an opportunity to build it themselves. In 1844 what is known as the "Sinking-Fund Ordinance" was adopted. This

ordinance regulated the fiscal affairs of the city, and purported, among other things, to vest the sale and disposition of real property, including grants of land under water, in "the commissioners of the sinking fund of the city of New York," composed of the mayor, recorder, comptroller, and treasurer of the city, and the chairman of the finance committee of the board of aldermen and assistant aldermen, respectively. The construction of bulkheads and piers under such grants, however, was inhibited, except with the consent of the common council. Chapter 225 of the Laws of 1845 authorized the city to borrow money for the purpose of introducing Croton water into the city, inhibited the amendment of said ordinance without consent of the legislature, and provided that "the said ordinance shall remain in full force until the whole of the debt created for the introduction of the Croton water into the city of New York shall be fully redeemed."

It appears from the report of the committee on wharves, etc., to the council, in 1847, that the city did not have enough piers to accommodate its commerce, and that the opinion was prevalent that wharfage property did not yield fair returns. Resolutions were adopted directing the construction of several piers,—among them, one 300 feet long midway between Jefferson and Rutgers streets,—and providing that notice be given to the adjacent proprietors to unite in the construction of said piers. One lot owner remonstrated against the pier, and only one offered to join or to build it all at his own expense. He was permitted to build it all, but it was provided that, if others should elect to pay their share on or before completion, they should be permitted to do so, and to share in the pier according to their respective holdings. The pier was built by one adjacent owner, who has held possession thereof and received the wharfage therefrom. This is known as pier 45 (old number), East river, and is not directly involved in this case.

On the 19th of June, 1848, William Dennistown and Thomas Dennistown acquired, through certain mesne conveyances, the premises previously conveyed to Bool, together with the wharfage rights. The consideration stated in the deeds to them was $42,000 for the lots, and $6,000 for the property in the wharf. These deeds were made, by express stipulation therein, subject to the conditions of the Rutgers grant of 1817. On the 10th of February, 1849, a resolution of the common council was approved, directing that a pier 300 feet long by 40 feet wide be built midway between Clinton and Jefferson streets, and that notice be given to the proprietors of lots lying opposite to unite in the construction of the pier. This resolution was adopted agreeably to a petition presented by the proprietors and lessees of the lots opposite. W. and T. Dennistown were the only proprietors that offered to join in building the pier, and they offered, and were permitted by resolution approved April 17, 1849, to erect the pier at their own expense, on condition that others should be permitted to share in the pier on paying a proportionate part of the expense on or before the completion thereof. The pier was directly opposite the lots of W. and T. Dennistown. They completed it in 1849. None of the adjoining proprietors elected to join in the expense, and they and their grantees have always had possession of the pier and bulkhead, and exclusively received the wharfage therefrom. This is known as pier 47 (old number), East river, and is the pier in controversy. The plaintiff is the niece of William and of Thomas Dennistown and fully succeeded to their title prior to 1878. Said property has all been assessed as real property, and the taxes thereon paid by the plaintiff and her predecessors. The bulkhead and pier have been kept in repair, and the slips on each side dredged, by plaintiff and her predecessors, at their own expense, and as required by the city authorities. The pier was practically rebuilt in 1866, and again in 1882, by plaintiff and her predecessors in title. It does not appear that the commissioners of the sinking fund took any action with reference to the construction of the pier, or that they did not. In 1871 a plan was adopted by the board of docks, and approved by the commissioners of the sinking fund, for the improvement of the water front along the East river, including that opposite the bulkhead and pier in question. This plan contemplated an exterior street 250 feet wide, including the 70 feet of South street, and piers extending at designated points into the river. This action was taken under chapter 574 of the Laws of 1871, which contemplated that

"rights, terms, easements and privileges" not owned by the corporation, and pertaining to any wharf, should be acquired by purchase or condemnation. The essential provisions of this statute have been continued in the successive city charters, and the authority to alter the plans conferred on the department of docks, with the approval of the commissioners of the sinking fund. An amended plan was adopted in 1898, and approved in 1899; the plan of 1871 not having been carried out. The amended plan contemplates an exterior street 150 feet wide, including the 70 feet of South street, and piers located at designated points, extending into the river. Opposite the original grant, extending from Rutgers to Clinton street, there are designated four piers, all over 450 feet long, forming three spaces, slips, or basins, where there are now five shorter piers, forming four spaces, slips, or basins. At the time of the grant to Rutgers, the land under the waters of the East river beyond the 400 feet from low-water mark was vested in the people of the state of New York. A line 400 feet from low-water mark appears to intersect the piers in question at about the middle. Pursuant to authority conferred by section 6 of said chapter 574 of the Laws of 1871, the commissioners of the land office granted to the city the land under the waters of the East river to an exterior line defined in said grant, passing beyond the end of the pier in question.

The foregoing are the only facts deemed material.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Theodore De Witt, for plaintiff.
Theodore Connoly, for defendant.

LAUGHLIN, J. The agreement was executed as authorized by law, in lieu of proceedings to acquire the plaintiff's title or rights by eminent domain. There is no claim of fraud or mistake, and no demand for a rescission or reformation of the contract. No definite theory seems to be developed or presented for relieving the city from the fulfillment of its contract. The argument of the learned counsel for the city is not that the plaintiff has no property rights or interest to convey, but that the city, under the reservation in its grant to Rutgers, is authorized to appropriate this pier and bulkhead or wharf by establishing a public slip or basin, and that therefore it becomes unnecessary at the present time to acquire any other rights or interests she may have. Under the provisions of the act of 1871, to which reference is made in the statement of facts, the department of docks, in addition to being authorized to acquire title where the city had no title, was authorized to acquire, by agreement or condemnation, "any rights, terms, easements and privileges" pertaining to any wharf not already owned by the city. If, therefore, the plaintiff had any right, title, or interest to convey, it was competent for the city, through its department of docks, to purchase the same. No question of adequacy of consideration is presented or could be raised on this record. If the plaintiff is able to convey or release the right, title, and interest which she has agreed to convey or release, it would seem, therefore, that she is entitled to judgment for specific performance.

The first question to be considered is, what has the plaintiff agreed to convey or release? It is not shown that the commissioners of docks were not aware of the reservation in the grant from the city to Rutgers at the time they entered into this agreement with the plaintiff. The agreement indicates that they were aware that the city

probably had some title or interest in the premises.    It is a reasonable assumption that in the performance of their important duties, aided by the advice of counsel, they became familiar, in a general way, at least, with the grants of water rights and privileges previously made by the city.    In these circumstances, the defendant, in making the contract, is chargeable with knowledge of the rights and privileges previously reserved by the city itself.    The contract in question should therefore be construed in this light.    Thus construed, it is clear that the agreement on the part of the plaintiff was to sell and convey all outstanding right, title, and interest not owned by the city or by the people of the state; and the reasonable construction of the agreement is that she represented that she owned and was able to convey good title to all such outstanding rights, titles, and interests.    The city, of course, was not chargeable with knowledge as to where the title to these outstanding rights, titles, and privileges was vested.    The plaintiff was in possession, claiming ownership.    The object of this agreement was to acquire the outstanding rights, so that the city would have, with the title it then possessed as the owner of the fee, and with the title it had acquired or might thereafter acquire from the state, complete title.    It is clear that if there is any outstanding right, title, or interest not owned by the city or the people, it is owned by the plaintiff.    There was a good consideration for the agreement.    She was in possession, claiming title, rights, and interests, and her claim was something more than colorable.    We might very well end the discussion with a statement of the grounds upon which she could, at least with much plausibility and force, assert title, whether successfully or not; but, in view of the importance of the litigation, we deem it proper to consider the validity and extent of the plaintiff's title.    The city unquestionably owns the fee of South street, but South street was built by the plaintiff's predecessors in title, pursuant to the covenant contained in the grant to Rutgers; and through that grant her predecessors in title and the plaintiff acquired the right to wharfage on that part of the bulkhead opposite her premises, subject only to the reserved right of the city to appropriate part of the bulkhead included within the original grant for the purpose of a public slip or basin.    It is contended on the part of the city that this reserved right has never been exercised, and that it is now at liberty, under the plan of dock improvements adopted in 1898, to claim the benefit thereof.    That plan does not purport to be an appropriation of a public slip or basin under the reservation contained in the grant to Rutgers.    It is a general plan for dock improvements, embracing the entire frontage covered by the grant to Rutgers, and more.    It contemplates four piers opposite the premises embraced in this original grant, and three slips or basins in between.    The city's reserved right was to locate, not three public slips or basins, but only one; and at the time the dock improvement of 1898 was adopted there were, and are now, five piers, with water between, opposite this tract. These five piers were constructed by authority of the city, and have been in use for more than 50 years.    It appears that ever since 1833, when the city changed its original plan, and constructed the second pier opposite Jefferson street, instead of 80 feet westerly of the first

79 N.Y.S.—23

pier, which was at the foot of Clinton street, the plaintiff and her predecessors in title have exercised the sole right of collecting wharfage and cranage along the bulkhead opposite the premises now owned by her. It also appears that pier 47 was constructed by the plaintiff's predecessor in title, with the consent of the city, in 1849, and that they and she have ever since exercised the exclusive right to the use thereof, including collecting wharfage and cranage thereon, and have kept the pier in repair, and dredged adjacent thereto, by direction of the city authorities, and that the same has been continuously taxed to them as real estate, and they have paid the taxes thereon. The city having directed or consented to the construction of these piers, and having acquiesced in their construction and use for 50 years, it is not competent for it now to make an appropriation of part or all of this bulkhead for a public slip or basin. It should be deemed to have exercised its reserved rights in determining upon the first plan of dock improvements made in 1831, by which no part of the bulkhead adjacent to the plaintiff's premises was attempted to be appropriated. A reserved right is limited by the rule of reasonable enjoyment. Grafton v. Moir, 130 N. Y. 465, 29 N. E. 974, 27 Am. St. Rep. 533. And exemption or reservation must be construed most favorably to the grantee. Blackman v. Striker, 142 N. Y. 555, 37 N. E. 484. It would be unreasonable to construe the exception or reservation as giving the grantor the right to appropriate the entire bulkhead opposite the two blocks for a public slip or basin, and would render the same void on the ground of repugnancy. Schermerhorn v. Negus, 1 Denio, 448; Craig v. Wells, 11 N. Y. 315; Jones v. Thresher Co., 171 Ill. 502, 49 N. E. 700; De Peyster v. Michael, 6 N. Y. 467, 57 Am. Dec. 470; Greene v. Greene, 125 N. Y. 506, 512, 26 N. E. 739, 21 Am. St. Rep. 743.

If the city bases its claim on an exception from the grant, this necessarily implies that some estate was granted, for otherwise the exception would be repugnant to the grant. Craig v. Wells, supra. Construed as an exception, the exception would also be void for uncertainty, for it covered nothing then in existence, or capable of being identified, and omitted from the conveyance. Thompson v. Gregory, 4 Johns. 81, 4 Am. Dec. 255; Flaherty v. Cary, 62 App. Div. 116, 70 N. Y. Supp. 951, and cases cited. This case is distinguishable from Consolidated Ice Co. v. City of New York, 53 App. Div. 260, 65 N. Y. Supp. 912; Id., 166 N. Y. 92, 59 N. E. 713,—in that there the street excepted from the grant had been laid out upon maps, and was clearly defined and capable of being located, whereas here the public slip or basin had not been laid out. It will be seen from the statement of facts that the city did not require the plaintiff's predecessor in title to construct South street until 1832, which was after it had determined upon the erection of the two piers, in 1831. Whatever election the city desired to make should have been made before requiring these improvements. The abutting owners were justified in assuming, therefore, that the action of the city in 1831 was an appropriation under this reservation. That seems to have been the practical construction placed upon the grant, and acquiesced in by all the parties ever since.

The city contends that the action of Bool's executors in leasing the abutting property on February 1, 1841, with a proviso in the lease for a reduction in the rent in case the city should take the bulkhead for public purposes, is inconsistent with this theory. The city was not a party to that lease. The admission should not be deemed an estoppel as against the executors. It does not show that the executors recognized the right of the city, but it was, rather, a provision inserted presumably to satisfy the tenants. It is not reasonable to suppose that it was within the contemplation of the parties when pier 47 was constructed, in 1849, that it was subject to removal at any time by the city's electing to locate a public slip or basin there. The fair and reasonable construction of this reservation required that the city should make the appropriation which it claimed the right to make thereunder, before requiring the abutting owners to construct the wharf and piers. Such seems to have been its understanding of its rights at the time. Having directed these improvements, and authorized the construction of pier 47, it should be deemed to have waived or abandoned any right to locate a public slip or basin at that point. Snell v. Levitt, 110 N. Y. 595, 18 N. E. 370, 1 L. R. A. 414; Cartwright v. Maplesden, 53 N. Y. 622; Crocker v. Crocker, 5 Hun, 587.

Subject to the reservation, though in the form of a covenant, the deed to Rutgers conveyed an indefeasible estate of inheritance in the bulkhead, street, or wharf; and the proceedings for the construction of the pier vested a like estate therein, which neither the city nor the state, although owning the fee in remainder, can take from the proprietors without compensation. Bedlow v. Stillwell, 158 N. Y. 292, 53 N. E. 26, and cases cited; Langdon v. Mayor, etc., 93 N. Y. 129.

It appears that the outer end of pier 47, embracing more than one-half of the entire pier, was constructed on land owned by the state; being beyond 400 feet from low-water mark. The sinking-fund ordinance did not apply at least to this part of the grant, for its operation was limited to grants of land owned by the city; and the common council had the right, under the laws of 1813, to give not only the city's consent to the construction of this part of the pier, but the consent of the state as well. Langdon v. Mayor, etc., 93 N. Y. 129; Bedlow v. Dry Dock Co., 112 N. Y. 263, 19 N. E. 800, 2 L. R. A. 629. It was constructed and used under a claim of right for more than 20 years before the city obtained from the state title to the land beyond the 400-foot line. This gave the plaintiff a right by prescription to maintain this part of the pier, and to access thereto over the waters of the state. Bedlow v. Dry Dock Co., supra; Same v. Stillwell, 158 N. Y. 292, 53 N. E. 26, and cases cited.

Moreover, the sinking-fund ordinance did not apply to grants for the construction of piers by abutting proprietors, but only in case of their refusal to construct piers when required. Such proprietors had a vested right of pre-emption, under the statute, to construct and acquire all piers that might thereafter be ordered or authorized on that part of the wharf in which they had such interest (Bedlow v. Dry Dock Co., supra); but the common council was first required

to determine that the public interests would be subserved by the construction of the pier, which, it has been seen, was done in this case. This having been determined, and construction by the abutting owners having been consented to by the common council, they had the right to build and to own and hold the pier, and all rights necessary to its enjoyment. Mayor, etc., v. Hart, 95 N. Y. 443; Williams v. Mayor, etc., 105 N. Y. 419, 11 N. E. 829; Bedlow v. Dry Dock Co., 112 N. Y. 263, 19 N. E. 800, 2 L. R. A. 629; Bedlow v. Stillwell, supra. If the abutting proprietors refused to construct a pier, then a grant might be made to others, and the sinking-fund ordinance would doubtless apply. The case of Mayor, etc., of City of New York v. New York Cent. & H. R. R. Co., 69 Hun, 324, 23 N. Y. Supp. 562; Id., 147 N. Y. 710, 42 N. E. 724,—cited by the defendant to the contrary, is not an authority in its favor. The pier in that case was erected by one having a grant, but who was not an abutting owner, and had no right by prescription. As has been seen, the consent of the common council was necessary to the erection of piers, even under grants made by the city expressly for that purpose, as provided by the sinking-fund ordinance. If the sinking-fund ordinance did apply to the construction of this pier, the consent of the common council should be regarded as having been given in conformity to and compliance with the sinking-fund ordinance, and not as a recognition of any superior title in the city. If a grant from the commissioners of the sinking fund was necessary, it will be presumed to have been made after such a great lapse of time, and the plaintiff's right to this pier is good by prescription. Lewis v. Railroad Co., 162 N. Y. 202, 223, 56 N. E. 540.

Part of the plaintiff's title came by will, and part by conveyances, but in neither is her title made subject to the Rutgers grant. It thus appears that she acquired her title, not in recognition of the city's right to make any further appropriation under the reservation contained in the grant to Rutgers. She came into title and has exercised her rights on the assumption that whatever rights the city reserved had been previously exercised, which clearly distinguishes this from the case of Mayor, etc., v. Law (Sup.) 6 N. Y. Supp. 628; Id., 125 N. Y. 380, 394, 26 N. E. 471. It thus appears, we think, that the plaintiff had substantial property rights, and all the title that it was within the contemplation of the parties that she should convey.

It follows, therefore, that the plaintiff should have judgment on the submission for the specific performance of the contract, with costs, as demanded in the submission. All concur, except VAN BRUNT, P. J., dissenting.