DOROTHY D. WHITNEY *v.* GILBERT W. HEUBLEIN ET AL.

WYNNE, C. J., DALY, KING, MURPHY and BORDON, JS.

Argued February 6—decided March 6, 1958

*Allyn L. Brown, Jr.,* with whom was *Nathan G. Sachs,* for the appellant (named defendant).

*Cyril Coleman,* for the appellee (plaintiff).

DALY, J. The complaint contained two counts. The first count was expressly abandoned. The trial court decided the issues for the plaintiff upon the second count, in which she alleged that the named defendant, hereinafter referred to as the defendant, had failed, since 1954, to make payments to her in accordance with the terms of a separation agreement

executed by them in August, 1950, the provisions of which were adopted and approved in a Nevada decree of divorce obtained by the plaintiff in November, 1950. The defendant has appealed from the judgment in the present case. We consider only those assignments of error which he has pursued in his brief. *Somers* v. *Hill,* 143 Conn. 476, 480, 123 A.2d 468.

The court found the following facts: The plaintiff and the defendant were married on September 12, 1931, in Poughkeepsie, New York. Thereafter, they lived together as husband and wife in various places and in May, 1946, took up permanent residence in the region of Hartford. There were two children of the marriage, one born on October 17, 1933, and the other on July 22, 1936. In the spring of 1949, the defendant left the family residence and thereafter he and the plaintiff lived apart. The family residence was sold and the plaintiff with her two children occupied a house in Hartford or West Hartford. On August 28, 1950, after negotiations carried on through attorneys, the parties executed a separation agreement. On the same day, the defendant and the Hartford-Connecticut Trust Company executed a pledge agreement to secure the performance of the separation agreement. These agreements were executed in contemplation of a divorce, which the defendant was anxious to obtain, and in view of divorce proceedings which had been determined upon. The separation agreement specifically provided that, if either party should apply for a divorce and obtain one, the agreement would be submitted to the court for approval and would be binding only to the extent that it was approved, or was modified and approved, by the court. The agreement also provided that it was made "only to settle and adjust the support and

maintenance and rights of the wife and is not made for the purpose of procuring a divorce or of influencing the court in the event of divorce as to whether either of the parties has grounds for divorce against the other."

The court also found: On or about September 26, 1950, the plaintiff took up residence in Nevada and filed a suit for divorce from the defendant in the Second Judicial District Court of that state. The defendant did not contest the suit, but he entered an appearance by his attorney. On November 8, 1950, the plaintiff obtained a decree of divorce. The decree adopted and approved the provisions of the separation agreement in the language stated in the footnote.[1] The plaintiff went to Nevada for the sole purpose of obtaining a divorce and did not intend it to be her permanent home. Shortly after having obtained the divorce, she returned to Hartford and

---

[1] "[I]t is hereby ordered, adjudged and decreed . . . [t]hat the property rights of the plaintiff and the defendant, and all matters pertaining to the support and maintenance of the plaintiff, and all matters concerning the care, custody, control, support, maintenance and education of the minor children, be, and the same hereby are, settled and decreed in accordance with the terms and provisions of that certain agreement in writing, duly made, executed and entered into for such purpose by and between Dorothy Duncan Heublein and Gilbert Whipple Heublein, dated the 28th day of August, 1950; and the terms and provisions of said agreement are hereby ratified, confirmed, approved and fully adopted by this Court in all respects, and with the same force and effect as if said agreement were annexed hereto and set out in full as a part hereof; that the custody of said minor children, Arthur Cary Heublein, born October 17, 1933, and Louise Duncan Heublein, born July 22, 1936, be, and the same is, hereby awarded and committed to the plaintiff, as provided in said agreement; that the plaintiff and the defendant be, and they hereby are, directed and ordered to comply with all the terms and conditions of said agreement; and that judgment be, and the same hereby is, rendered in favor of the plaintiff and against the defendant, in accordance with the terms and provisions of said agreement of August 28, 1950."

resumed her residence with her children, the custody of whom had been granted to her by the Nevada court. On May 31, 1952, she married Howard F. Whitney. They now live together as husband and wife in Avon. After November 8, 1950, the date of the divorce decree, the defendant married Anne K. Johnson, with whom he now lives in Canton. There are two infant children of that marriage. The defendant is obligated by the pledge agreement dated August 28, 1950, to furnish to the bank on or before February 1 of each year a certified copy of his federal income tax return and a statement of his tax-exempt income, duly prepared by a certified public accountant. Although the plaintiff and the bank have demanded that the defendant furnish them information as to his 1954, 1955 and 1956 income and that he pay the plaintiff such portion thereof as may be due her, the defendant has entirely failed, neglected and refused to do so.

The court concluded that the defendant, having been represented by counsel in the Nevada divorce proceeding and having subsequently remarried, could not successfully maintain in this action, which concerns only the private property rights of the parties, that the divorce decree was invalid for want of jurisdiction; that the defendant was in no position to take advantage of the equitable doctrine of clean hands; that the Nevada divorce decree, terminating the marriage of the parties and approving and fully adopting the separation agreement signed by them in August, 1950, was a valid and enforceable decree binding upon the defendant in Connecticut; that by the terms of that decree and the separation agreement incorporated therein by reference, the defendant was legally obligated to make payments to the plaintiff as more particularly set forth in the agree-

ment; and that the defendant was in default with respect to his obligations under the pledge agreement.

The plaintiff had demurred to the first special defense contained in the defendant's answer. Although this defense purported to state facts sufficient to support a claim that the agreements executed in August, 1950, were "illegal, inequitable, unconscionable, oppressive and contrary to ... public policy ... and should therefore not be enforced," the defendant affirmatively alleged therein that the Nevada decree "confirmed, ratified and approved" the separation agreement of August, 1950; that the defendant through an attorney filed a notice of appearance in the Nevada court; and that after November 8, 1950, he married Anne K. Johnson, with whom he "continuously thereafter lived and now lives." In and by her demurrer, the plaintiff asserted that in view of the affirmative allegations contained in the special defense the defendant was barred from attacking the enforceability of the agreements of August, 1950. She based this claim upon the allegation in the special defense that the defendant married Anne K. Johnson subsequent to the entry of the Nevada decree, and upon the provision in § 1 of article four of the United States constitution, which requires each state to give full faith and credit to the judicial proceedings of every other state. The defendant contends that the court erred in sustaining the demurrer and in reaching the conclusions stated above.

"The full faith and credit clause is one of the provisions incorporated into the Constitution by its framers for the purpose of transforming an aggregation of independent, sovereign States into a nation. If in its application local policy must at times be required to give way, such 'is part of the price of our federal system.' *Williams* v. *North Carolina,* 317

U.S. 287, 302 [63 S. Ct. 207, 87 L. Ed. 279]." *Sherrer* v. *Sherrer,* 334 U.S. 343, 355, 68 S. Ct. 1087, 92 L. Ed. 1429. The Nevada court was not bound to accept the parties' written agreement. It could, however, incorporate it in the judgment and by so doing adopt its terms as its own. The legal effect of incorporating the agreement was to merge it with the judgment and make it a part thereof. While contracts between husband and wife regarding property settlements entered into prior to the institution of proceedings for divorce should be carefully examined, they are not necessarily contrary to public policy and void unless they are concealed from the court. If they are submitted to the court for approval, and full opportunity is given for scrutiny and ascertainment of the facts, they are unobjectionable. *Koster* v. *Koster,* 137 Conn. 707, 711, 81 A.2d 355.

"There is something offensive to common decency in the position of one who, having procured a divorce or having voluntarily appeared as a party to the proceedings and raised no objection to the disposition of the case, subsequently remarries in reliance upon the decree and thereafter attempts to have it declared void on the ground that the court granting it lacked jurisdiction, with the result of making himself a bigamist, bringing contumely and disgrace upon the woman he has married and, if children have been born of the union, establishing their illegitimacy .... Where the issue merely concerns the private property rights of the parties and the validity of the divorce decree is only incidentally involved, the considerations of the greater public policy [present where the marital status is directly in issue] lose weight and it is held upon high authority that the person who, in such circumstances, has remarried

will not be permitted to claim that the decree is invalid for want of jurisdiction. . . . [T]he defendant does not come into court with clean hands when he seeks to establish his affirmative plea that the decree is invalid for extraneous reasons. That he is not permitted to do." *Hooker* v. *Hooker,* 130 Conn. 41, 50, 51, 32 A.2d 68.

There is no error.

In this opinion the other judges concurred.