## PEGGY RYAN HAMILOS v. JAMES CHRIST HAMILOS

[No. 1701, September Term, 1981.]

\* \* \*

## J. EDWARD JOHNSTON, JR. v. HELEN T. JOHNSTON

[No. 9, September Term, 1982.]

*Decided October 6, 1982.*

The causes were argued before GILBERT, C. J., and MORTON and MOYLAN, JJ.

*Richard T. Cremin* and *Thomas J. Beetel,* with whom was *Joseph F. Shanahan* on the brief, for appellants.

*Thomas D. Washburne,* with whom were *Ober, Grimes &*

*Shriver* on the brief, for appellee James C. Hamilos. *Thomas Waxter, Jr.,* with whom were *John H. Mudd, H. Thomas Howell, Charles C. Shelton* and *Semmes, Bowen & Semmes* on the brief, for appellee Helen T. Johnston.

GILBERT, C. J., delivered the opinion of the Court.

## FORWARD

Those who opine that "there is nothing new under the sun" evidence that they have spent little, if any, time in a courtroom. The tribunals of this land frequently experience something new and different. These two appeals are illustrative of the point.

The primary thrust of the suits out of which these appeals grow is to vitiate the underlying separation agreement upon which a divorce *a vinculo matrimonii* was granted while simultaneously allowing the decree of divorce itself to remain valid. Such a legal maneuver is akin to demolishing a structure's foundation and having the building it supported continue standing.

The Circuit Court of Baltimore City (Dorf, J.) disposed of the separate attacks on the "agreements" thusly: in one case, he granted a motion raising preliminary objection; in the other, he sustained, without leave to amend, a demurrer. The chancellor also denied a defendant's claim for counsel fees under Md. Rule 604b. All the disappointed litigants have appealed.

The separation agreements that the appellants assail were, when the appellants were plaintiffs in the divorce cases, expressly incorporated into the divorce decrees at their request. Each agreement provided that the support was contractual and non-modifiable. Those former plaintiffs now aver that they were not competent to enter into a separation agreement. We observe, however, that neither appellant asserts that he or she was so incompetent that the decree of divorce should also be stricken. Rather, each makes pellucid that his or her assault is upon the separation agreement, separate and distinct from the decree of divorce.

The appellants are seemingly content with the divorce decree insofar as it severed the bonds of matrimony but no further.

Since the issue in these two appeals is the same and at least one of the counsel for the appellants is identical, we, on motion, consolidated the cases. Before reaching the discussion of the issues, we shall set forth below the backdrop from which each case found its way to the circuit court and thence to this tribunal.

## The Johnston Case

### (Appeal No. 9, September Term 1982)

The Johnstons were married on June 26, 1948, and they separated in June 1971. Their union produced four children, all of whom have now reached their majority. Following separation, each, through counsel, negotiated the agreement now under siege. That agreement provided, *inter alia*, for the support and maintenance of Helen T. Johnston, the four children, the transfer of certain property interests, the execution of testamentary designations, and the creation of various trusts. The agreement made in contemplation of a divorce proceeding between the Johnstons expressly provided for its incorporation into the divorce decree itself. The agreement was executed by both parties before a notary public on February 16, 1973. The signature of the appellant was witnessed by his then counsel.

A little over a month later, in the Circuit Court of Baltimore City, Mr. Johnston filed a bill of complaint for divorce *a vinculo matrimonii.* He testified in open court in support of his bill of complaint, and at his express request the agreement was incorporated in the divorce decree of June 27, 1973.

Approximately eight years later, May 22, 1981, Mr. Johnston, through new counsel, filed, in the divorce case, a "Petition To Set Aside and Void Agreement." The petition averred that in March 1981, Mr. Johnston "consulted with professionals with respect to . . . [his] state of mind during the

negotiations and subsequent execution of the aforesaid [separation] agreement." The consultations reportedly disclosed that Johnston "suffered from a mental disease and/or mental defect during the negotiations and . . . execution of the . . . Agreement which severely impaired . . . [his] mental competency at that time." Because of that alleged "incompetency," Johnston prayed that the Separation Agreement be voided. The trial court was not requested to take any other action with respect to the decree.

Helen Johnston, in due time, responded by filing a "Motion to Strike and Motion Raising Preliminary Objection." She contended that the children of the marriage were necessary parties and that the separation agreement was incorporated in an enrolled decree and was thus subject to the requirements of Md. Rule 625a. She further alleged that Rule 625a had not been satisfied, and that the petition, on its face, showed a lack of ordinary diligence on the part of Mr. Johnston. Additionally, she requested that she be allowed "reasonable attorneys' fees." *See* Md. Rule 604b.

After a hearing, Judge Dorf granted Mrs. Johnston's motion to strike the petition as untimely because it did not comply with Md. Rule 625a.

Judge Dorf also held that the children of the litigants were necessary parties since they had substantial pecuniary interests resulting from the separation agreement, and that they were entitled to protect those interests. He denied Mrs. Johnston's request for counsel fees.

## The Hamilos Case

### (No. 1701, September Term 1981)

James C. and Peggy R. Hamilos were married on April 14, 1960. Three children were born to the couple. One child is still a minor. Mrs. Hamilos, on March 1, 1979, filed a bill of complaint in the Circuit Court of Baltimore City in which, *inter alia,* she sought a divorce *a mensa et thoro.* The parties executed both a "Voluntary Separation Agreement and Property Settlement Agreement" and "Addendum" thereto

on December 28, 1979. The Hamilos' agreement purported to be a final settlement of all property, support, and custody issues. It provided that it was to be incorporated into the divorce decree. Mrs. Hamilos' signature on the agreement was witnessed by her then counsel and acknowledged before a notary public.

Almost one month later, Mrs. Hamilos filed an amended bill in which she asserted a desire for a divorce *a vinculo matrimonii.* Before a Master-Examiner, she testified, *inter alia,* that she and her husband had entered into a separation agreement; that she was familiar with the agreement; that she had signed the agreement; and that she wanted it incorporated into the decree of divorce. The decree of March 27, 1980, incorporated the December 28, 1979, separation agreement and addendum.

Seventeen months thereafter, Mrs. Hamilos filed a petition in the divorce proceeding to "Modify Divorce Decree for Declaratory Judgment and Other Relief and Affidavit." She claimed that at the time she signed the agreement and proceeded with the divorce, "she was using alcohol in combination with prescribed drugs, and required hospitalization for an emotional disorder, and was not possessed of sufficient mental capacity to enter into said Agreement, or knowingly participate in the action for Divorce." Mrs. Hamilos did not ask that the divorce decree itself be invalidated.

The petition was met with a demurrer. The matter was heard by Judge Dorf, who sustained the demurrer without leave to amend. This appeal ensued.

### —The Issues—

I. Did the chancellor err in treating Mrs. Johnston's Motion to Strike as a demurrer?

II. Is an attack upon a property settlement agreement that has been incorporated into a divorce decree an assault on the decree, or may the agreement, like the marriage ties themselves, be severed and treated separately?

III. Alternatively, has either appellant, pursuant to Md. Rule 625a, set forth sufficient allegations of "fraud, mistake or irregularity" so as to warrant a hearing on the merits?

IV. Did the chancellor abuse his discretion in declining to award reasonable counsel fees to Mrs. Johnston's attorneys.

## I.

Mr. Johnston, in his petition, endeavored to chart a course around Md. Rule 625a, the barrier that protects enrolled judgments and decrees from raging storms and controversies. Mrs. Johnston's response to the "petition" took the form of a combination "Motion to Strike and Motion Raising Preliminary Objection." Inferentially, Judge Dorf pragmatically treated the "Motion to Strike" as a demurrer, and as so treated, he sustained it without leave to amend. Simultaneously, he granted the Motion Raising Preliminary Objection on the ground that there was a want of necessary parties.

Mr. Johnston asserts that the chancellor erred, and that the case should be permitted to go to trial on Johnston's petition because the responsive pleadings are insufficient to constitute a demurrer. What appellant, Johnston, would have us do is substitute form for substance and, thereby, subject an enrolled decree to an assault it should not have to endure. We decline to subvert the enrolled decree and submit it to the indignity of an attack such as Mr. Johnston would make. If there ever was a time when the niceties of pleadings should be ignored in the interest of a just result, this is that time.

## II.

Each appellant argues that he or she is seeking revision of the separation agreement which each asseverates is not

the same as an attempt to invalidate or revise the divorce decree even though the decree incorporated the agreement. The appellants perceive the decree and the agreement to be separate and distinct, notwithstanding the inclusion of the agreement by reference into the decree.

Indubitably, a husband and wife may contract to dispose of property rights and support obligations arising out of the marital relationship, and they may do so with the intent to have that agreement incorporated into a final decree of divorce. *Grossman v. Grossman,* 234 Md. 139, 198 A.2d 260 (1964). Indeed, the Court of Appeals has, by Rule S77b, expressly authorized the incorporation into a divorce decree of a "deed, agreement or settlement between husband and wife." Rule S77 has been held to mean that an agreement which is incorporated into a decree becomes as much a part of that decree as if it were completely set forth therein *in haec verba. Luhmann v. Luhmann,* 37 Md. App. 185, 376 A.2d 1141 (1977).

A review of the Johnston and Hamilos agreements readily reveals that both agreements contemplated incorporation by reference into the decree. The respective divorce decrees approved and incorporated the agreements, and thus made them a part of the decree itself.

Md. Ann. Code art. 16, § 28 provides that where "there is an express waiver of alimony, support and maintenance by the husband or wife [and] . . . the provisions of the . . . agreement . . . specifically state that the provisions with respect to the alimony, support and maintenance of the husband or wife are not subject to any court modification," such covenants are non-modifiable. *See Goldberg v. Goldberg,* 290 Md. 204, 428 A.2d 469 (1981).

The Hamilos agreement provides that the sum payable to Mrs. Hamilos "shall be fixed and unchangeable for any reason whatever." She and her then husband "expressly waive[d] the right everafter to have any court change or make a different provision for the support and maintenance of the [appellant, Mrs. Hamilos]." Their agreement falls squarely within the scope of Md. Ann. Code art. 16, § 28, and

the court, under the facts presented, lacked the power to modify the support provisions of the agreement.

Section 28 was added to Md. Ann. Code art. 16 by laws 1976, Ch. 170. It became effective upon passage but applied prospectively only.[1] Since the Johnston agreement was entered into more than three years previous to the effective date of the statute, section 28 has no application to the Johnstons. *Terry v. Terry,* 50 Md. App. 53, 435 A.2d 815 (1981).

Inasmuch as the separation agreements in these two appeals were incorporated into the respective decrees of divorce at the request of the particular appellant and because the incorporation is sanctioned by statute as well as rule of Court, we conclude that the attacks in the instant cases are directed toward enrolled decrees. It matters not that the appellants choose to call their assault on the decrees by another name in order to avoid the strenuous task of demonstrating the "fraud, mistake or irregularities" necessary to set aside an enrolled decree. Md. Rule 625a. That the appellants opt to assign another identity to the assault on the decree does not make it more or less an assault.[2]

Appellants do not explain what effect, if any, the voiding of the agreement would have upon the decree, nor do they deign to tell us why the parties were competent insofar as the divorces are concerned but incompetent with respect to the separation agreements.

In any event, we agree with Judge Dorf that the attempts mounted by the appellants constituted incursions on the decrees.

---

1. Laws 1976, Ch. 170, Section 2, provides that "this act shall not be construed or interpreted to have any effect upon or application to any deed, agreement or settlement occurring prior to the effective date of this act [April 13, 1976].

2. William Shakespeare (1564-1616) in his play *Romeo and Juliet,* Act II, scene ii, put it differently:

"What's in a name? That which we call a rose
By any other name would smell as sweet."

### III.

Having determined that Md. Rule 625a must be sated, we turn to an examination of the petitions to ascertain whether there are sufficient allegations of "fraud, mistake or irregularity" to raze the protective wall erected around enrolled judgments by the rule.

There must, particularly in today's highly litigious society, be some point in time when there is finality of judgment. To that end, the Court of Appeals has directed that:

> "For a period of thirty days after the entry of a judgment [decree], or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment [decree]. *After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity."* (Emphasis supplied.) Md. Rule 625a.

Mr. Johnston's belated discovery that he was suffering an alleged mental disease or mental defect at the time he executed the separation agreement, measured by any reasonable standard, does not amount to "fraud, mistake or irregularity" as those words are used in Rule 625a. If Johnston were to prevail in this case, judgments and decrees would never reach finality. Any party could subject a judgment or decree to indefinite judicial inquiry by simply asserting a lack of mental capacity at the time of the entry of the decree.

Mrs. Hamilos has raised a number of contentions that she says show "fraud, mistake or irregularity." Among her allegations are: 1) she was influenced by a combination of alcohol and prescribed drugs; 2) she was hospitalized for emotional disorders and not possessed of mental capacity; 3) she was subject to coercion, fraud and duress by her then husband; 4) she was misled by expressions of love and promises of reconciliation during the separation and by the couple's continued sexual relationship; 5) that she was subjected to undue influence by her then husband; 6) that the

law firm that represented the husband had represented both parties prior to the marital separation, and that the knowledge the law firm had concerning her constituted an irregularity. What Mrs. Hamilos overlooks or ignores is that she was represented by an able attorney of her own choosing, and there is nothing in the record that remotely suggests that her lawyer did anything other than a competent job.

Mrs. Hamilos' assertions as enumerated above do not constitute fraud, mistake or irregularity within the meaning of Rule 625a.

Our review of the petition shows that the single time the word "fraud" is used is in connection with the "boiler plate" assertion of "coercion, duress, and/or fraud on the part of the said Defendant in securing the execution of the Agreement and its incorporation into the Decree of Divorce." Nothing in the petition underpins, supports, or gives substance to the use of the word "fraud." It is at best a bald allegation deserving of far less attention than we have given it.[3]

As we read Mrs. Hamilos' averments with regard to her emotional disorder and other problems, the "mistake," if any, was her signing of the agreement. The word "mistake" as employed in Md. Rule 625a does not mean a unilateral error of judgment on the part of one of the parties. "Mistake," as we said in *Bernstein v. Kapneck,* 46 Md. App. 231, 417 A.2d 456 (1980), means "a jurisdictional mistake." *See also Hughes v. Beltway Homes, Inc.,* 276 Md. 382, 347 A.2d 837 (1975); *Miles v. Hamilton,* 269 Md. 708, 309 A.2d 631 (1973); *Ashe v. Spears,* 263 Md. 622, 284 A.2d 207 (1971), *cert. denied,* 406 U.S. 958 (1972). There was no jurisdictional mistake in the Hamilos case, nor is there any claim to that effect.

The "irregularity" that Mrs. Hamilos perceives in her former husband's having been represented in the divorce

---

3. On oral argument, Mrs. Hamilos' counsel informed us that the affidavits in support of the petition showed the fraud. Those affidavits are not part of the record extract. We shall not search them out from the record. If counsel wanted us to read them, they should have been put in the extract. We do not consider them.

action by a firm that had represented both the husband and the wife in more tranquil times is not the "irregularity" to which Rule 625a is addressed.[4] With respect to the rule, "irregularity" usually means a defect in process or proceeding, neither of which is present in this matter.

## IV.

Mrs. Johnston would have us overturn Judge Dorf's refusal to require Mr. Johnston to pay the attorney fees she incurred in defending against the petition. She seeks to invoke Md. Rule 604b, which provides:

> "In an action or part of an action, if the court finds that any proceeding was had (1) in bad faith, (2) without substantial justification, or (3) for purpose of delay the court shall require the moving party to · pay to the adverse party the amount of costs thereof and the reasonable expenses incurred by the adverse party in opposing such proceedings, including reasonable attorney's fees."

Judge Dorf assigned no reasons for his declination to award counsel fees to Mrs. Johnston. Irrespective of how Mrs. Johnston and her counsel view the matter, it might well be that Judge Dorf did not find that Mr. Johnston had acted in bad faith or without any substantial justification.

We have reviewed the record to ascertain whether Judge Dorf abused his discretion in not requiring the payment of "reasonable attorneys fees" to Mrs. Johnston's lawyers. He did not.

## —Conclusion—

When a separation agreement is incorporated in an enrolled decree of divorce, an attack on the separation agreement may not be made without simultaneously

---

4. Mrs. Hamilos apparently alludes to the Code of Professional Responsibility DR 4-101. Even if there is a violation of DR 4-101, such a violation would not constitute the "irregularity" contemplated by Md. Rule 625a.

challenging the validity of the decree. The challenge to an enrolled decree is subject to the limitation imposed by Md. Rule 625a.

The appellants in these two appeals have failed to meet their burden of showing that the decrees were entered through "fraud, mistake or irregularity."

*Orders affirmed.*
*Costs to be paid by appellants.*