# J. EDWARD JOHNSTON, JR. *v.* HELEN T. JOHNSTON

[No. 152, September Term, 1982.]

*Decided September 13, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Richard T. Cremin* for appellant.

*Thomas Waxter, Jr.,* with whom were *John H. Mudd, H. Thomas Howell, Charles C. Shelton, Rignal W. Baldwin, Jr.,* and *Semmes, Bowen & Semmes* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

Although the parties have raised four issues in this case, the issue, as we see it, is whether a separation agreement approved and incorporated but not merged in a divorce decree may be collaterally attacked. For reasons to be discussed herein, we hold that it may not be where, as here, its validity is conclusively established by the decree which operates as *res judicata.*

The parties hereto were married in June of 1948 and lived together 23 years prior to separating in June of 1971. During the marriage, four children were born all of whom have now reached their majority. Subsequent to their separation, each party retained counsel and negotiated an agreement the purpose of which was "to effect a final and permanent settlement of their respective property rights." The agreement was executed by the parties in February of 1973 and provided, *inter alia,* for the support and maintenance of

Mrs. Johnston and the four children, the transfer of certain property interests, the execution of testamentary designations, and the creation of various trusts. The agreement was made in contemplation of divorce proceedings and provided:

"This agreement shall be offered in evidence in any such suit, and if acceptable to the court, shall be incorporated by reference in the decree that may be granted therein. *Notwithstanding such incorporation, this agreement shall not be merged in the decree, but shall survive the same and shall be binding and conclusive on the parties for all time."* (Emphasis supplied).

The agreement also provided:

"No modification or waiver of any of the terms of this agreement shall be valid unless in writing and executed with the same formality as this agreement."

Mr. Johnston filed a "Bill of Complaint for Divorce A *Vinculo Matrimonii"* in the Circuit Court for Baltimore City, specifically requesting "[t]hat the Agreement of the parties dated February 16, 1973 be incorporated by reference in any decree that may be granted herein." A "Decree of Divorce" was entered June 27, 1973, stating in relevant part:

"It is further ADJUDGED, ORDERED AND DECREED that the Plaintiff provide for maintenance, and support of Defendant and of the infant children of the parties, all as provided in the Agreement between the parties dated February 16, 1973 and filed in this cause of action, *said Agreement being hereby approved and made a part hereof as if fully set forth herein. . . ." (Emphasis added).*

In May, 1981, Mr. Johnston filed a "Petition to Set Aside and Void Agreement" on the basis that "consultations [with

professionals] ha[d] disclosed that [he] suffered from a mental disease and/or mental defect during the negotiations and subsequent execution of the aforesaid Agreement which severely impaired [his] mental competency at that time." The petition further asserted that Mr. Johnston's mental incompetency justified the voiding of the separation agreement. Mrs. Johnston in turn filed a "Motion to Strike and Motion Raising Preliminary Objection" contending that the four children were necessary parties as they were affected by the agreement, the allegations in the petition were insufficient to advise her of the nature of Mr. Johnston's mental disease or defect, that Mr. Johnston had failed to state whether he is presently mentally competent, and that she and other members of the family have relied upon and continue to rely upon the terms of the agreement. She also asserted that the relief requested should be denied because of laches and public policy. In addition, Mrs. Johnston argued that Mr. Johnston was actually seeking to have the enrolled decree set aside but had failed to allege "fraud, mistake or irregularity" as required by Maryland Rule 625.[1]

Following a hearing on the matter, the chancellor granted Mrs. Johnston's motion to strike stating in pertinent part:

"I do not feel that you can bifurcate the Agreement and the divorce decree. I think that they have merged and that they are one and the same.

It is obvious that if, in fact, any attack is made on the Agreement, that attack is also made on the divorce decree. The divorce decree here is the court document, which is the binding document on the parties. The document that has set up the custody,

---

1. Md. Rule 625 a states:

"For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity."

visitation, the property rights, support, alimony and so on. This decree was enrolled within 30 days. There has been no attack on this decree until ten years later. Strike that. There has been no attack on this decree until eight years later. Mr. Johnston now comes in and says the divorce decree in reality should be set aside.

Now, I think that is a play on words. I don't think there is any question that regardless of what counsel labels the petition, whether it is a petition to set aside the Agreement or to set aside what it is, it is clear in the Court's mind that the petition is seeking to either modify or set aside an enrolled judgment.

There is no question about the law, that the parties have a right to enter into a contract as to their matrimonial disputes and put those contractual obligations in a decree for divorce.

There is no question that the rule is clear as to Rule 625, that I cannot set aside this decree unless the parties can show any fraud, mistake or irregularity under the law.

There is no question here, and I don't think it is necessary at this time to rule on the question of laches.

\* \* \*

[A]nd I think that based on the pleadings as I have seen them here, and based on the law as I understand Rule 625, and based on laches, I would at this time grant the motion to strike."

The chancellor further held that the children were necessary parties as "they have individual rights in [the] various trusts." Mrs. Johnston's request for counsel fees was denied. The Court of Special Appeals affirmed the chancellor's ruling, stating in relevant part:

"Mr. Johnston asserts that the chancellor erred, and that the case should be permitted to go to trial on Johnston's petition because the responsive pleadings are insufficient to constitute a demurrer. What appellant, Johnston, would have us do is substitute form for substance and, thereby, subject an enrolled decree to an assault it should not have to endure. We decline to subvert the enrolled decree and submit it to the indignity of an attack such as Mr. Johnston would make. If there ever was a time when the niceties of pleadings should be ignored in the interest of a just result, this is that time." *Hamilos v. Hamilos,* 52 Md. App. 488, 493, 450 A.2d 1316, 1320 (1982).[2]

### (1)

We believe that the threshold issue, which neither the chancellor nor the intermediate appellate court discussed, is whether the separation agreement merged in the decree so as to be superseded by the decree.[3] The decree expressly approved and incorporated the agreement. However, the agreement explicitly provided that it was not to merge in the decree but was to survive the decree. As observed by the Supreme Court of Arizona in *McNelis v. Bruce,* 90 Ariz. 261, 367 P.2d 625, 631 (1961) (en banc):

"It is the rule that the mere approval of a property settlement in the divorce decree does not operate to make it a part of and enforceable as a decree. If the language of the agreement shows an intent to make

---

**2.** Upon motion by the parties, the Court of Special Appeals consolidated the *Johnston* and *Hamilos* cases. We were not requested to do so and have treated them separately although the issues are similar. *See* Hamilos v. Hamilos, 297 Md. 99, 465 A.2d 445 (1983).

**3.** "Merger" is defined as the "[s]ubstitution of rights and duties under judgment or decree for those under property settlement agreement." Black's Law Dictionary 892 (5th ed. 1979); Flynn v. Flynn, 42 Cal.2d 55, 265 P.2d 865, 866 (1954) (en banc); Roesbery v. Roesbery, 88 Idaho 514, 401 P.2d 805, 807 (1965).

it part of the divorce decree and the agreement is actually incorporated in the decree, the provisions of the agreement may be enforced as an order of the court. As soon as a property settlement agreement is incorporated into the decree the agreement is superceded by the decree and the obligations imposed are not those imposed by contract but are those imposed by the decree since the contract is merged in the decree." (Citations omitted).

The language of the agreement in *McNelis* was similar to that in the instant case, providing:

" ' This agreement shall be offered in evidence in such action and if acceptable to the court shall be incorporated by reference in any decree that may be granted herein. Notwithstanding such incorporation, this agreement shall not be merged in the decree but shall survive the same and shall be binding and conclusive upon the parties for all time.' " *Id.* at 631-32.

In determining whether the agreement merged in the decree so as to be modifiable by the court, the court looked to the intent of the parties, stating in pertinent part:

"The foregoing clause manifests the intention of the parties to the agreement. It was not disapproved by the court but rather adopted as part of the agreement; it therefore must be taken as speaking the intention of not only the parties but of the court that the agreement was not to be merged in the judgment." *Id.* at 632.

The Supreme Court of California has also had occasion to discuss the issue of merger:

"Merger is the substitution of rights and duties under the judgment or the decree for those under the agreement or cause of action sued upon. The question as to what extent, if any, a merger has

occurred, when a separation agreement has been presented to the court in a divorce action, arises in various situations. Thus, it may be necessary to determine whether or not contempt will lie to enforce the agreement, whether or not other judgment remedies, such as execution or a suit on the judgment, are available, whether or not an action may still be maintained on the agreement itself, and whether or not there is an order of the court that may be modified. . . .

In any of these situations it is first necessary to determine whether the parties and the court intended a merger. If the agreement is expressly set out in the decree, and the court orders that it be performed, it is clear that a merger is intended. On the other hand, the parties may intend only to have the validity of the agreement established, and not to have it become a part of the decree enforceable as such. Whether or not a merger is intended, the agreement may be incorporated into the decree either expressly or by reference. If a merger is not intended, the purpose of incorporation will be only to identify the agreement so as to render its validity res judicata in any subsequent action based upon it. If a merger is intended, the purpose of incorporation is, of course, to make the agreement an operative part of the decree." *Flynn v. Flynn,* 42 Cal.2d 55, 265 P.2d 865, 866 (1954) (en banc) (numerous citations omitted).

The agreement in *Flynn* provided that it could be approved by the court and incorporated in the decree. However, there was no provision, as in the instant case, that it would not merge. The decree ratified, approved, and incorporated the agreement. The court concluded that the parties and the court had clearly intended the agreement to merge in the decree and, accordingly, the court had jurisdiction to modify the provision for monthly payments.

In our view, where, as in the instant case, the agreement provides that it shall be *incorporated but not merged* in the decree, it is patent that the parties did not intend merger and the agreement survives as a separate and independent contractual arrangement between the parties.[4] *Accord Marshick v. Marshick,* 25 Ariz. App. 588, 545 P.2d 436, 438 (1976); *Sullivan v. Sullivan,* 102 Idaho 737, 639 P.2d 435, 438 (1981) (Bakes, C.J., concurring); *Coe v. Coe,* 145 Me. 71, 71 A.2d 514, 516 (1950); *Galyn v. Schwartz,* 77 A.D.2d 437, 434 N.Y.S.2d 1, 2-3 (1980), *appeal dismissed,* 53 N.Y.2d 701, 421 N.E.2d 504, 439 N.Y.S.2d 109 (1981), *modified,* 56 N.Y.2d 969, 439 N.E.2d 340, 453 N.Y.S.2d 624 (1982); *Kleila v. Kleila,* 50 N.Y.2d 277, 406 N.E.2d 753, 428 N.Y.S.2d 896, 900 (1980); *Sommer v. Sommer,* 94 N.Y.S.2d 23, 24 (1950), *aff'd,* 277 A.D. 998, 100 N.Y.S.2d 141 (1950). On the other hand, where, as in *Flynn, supra,* the agreement does not include a non-merger clause and it is incorporated in the decree, the agreement is superseded by the decree. *See also Wallace v. Wallace,* 1 Hawaii Ct. App. 315, 619 P.2d 511, 513 (1980); *Bowman v. Bennett,* 250 N.W.2d 47, 50 (Iowa 1977). The agreement, once incorporated and merged in the decree, is enforceable through contempt proceedings and may be modified by the court. *See, e.g., Early v. Early,* 6 Ariz. App. 110, 430 P.2d 456, 460-61 (1967); *Flynn, supra.*

It has also been stated that where the court incorporates the agreement as a whole, including the non-merger clause, the court approves the clause against merger so that the contract survives. *See* 24 Am.Jur.2d, *Divorce and Separation,* § 908 (1966); *accord McNelis, supra,* 367 P.2d at 632.

It is undisputed that pursuant to Maryland Rule S77, § b[5]

---

4. For further discussion, see 24 Am.Jur.2d, *Divorce and Separation,* § 909 (1966); 2 A. Lindey, Separation Agreements and Ante-Nuptial Contracts § 31-44 to 47 (1962).

5. Md. Rule S77, § b provides:

"A deed, agreement or settlement between husband and wife as described in Art. 16, Sec. 28 of the Annotated Code of Maryland may be received in evidence and made a part of the record in an action for divorce, annulment or alimony and may be incorporated, insofar as the court may deem proper, into the decree."

a separation agreement may be incorporated in the divorce decree. Moreover, there are numerous cases previously decided by this Court that firmly establish that once incorporated, the contractual provisions become part of the decree, modifiable by the court where appropriate and enforceable through contempt proceedings. Two of the more recent cases discussing the effects of incorporation are *Winston v. Winston,* 290 Md. 641, 431 A.2d 1330 (1981), and *Goldberg v. Goldberg,* 290 Md. 204, 428 A.2d 469 (1981). It is significant to note that the issue of merger has simply never arisen as none of the incorporated agreements contained a non-merger clause. On the other hand, it appears to be well established that separation agreements not incorporated in divorce decrees remain separate enforceable instruments. For example, we have observed that:

> "A support or property agreement is not invalid nor unenforceable merely because it is not embodied in the divorce decree, if not in conflict with such decree. If the divorce decree does not provide for alimony, it does not terminate liability of the husband to make the payments provided for by a separation agreement. A support or property agreement is not affected by the subsequent decree of divorce, if such settlement is neither incorporated in the decree, disapproved by the decree, nor superseded by provisions of the decree." *Shacter v. Shacter,* 251 Md. 304, 307-08, 247 A.2d 268, 270 (1968) (quoting 1 *Nelson on Divorce,* Ch. 13, § 13.54 (2d ed. 1945)).

In *Shacter,* the separation agreement was not incorporated as there were no grounds for divorce. However, its validity was clearly recognized as the court entered judgment for the wife against the husband in the amount due under the agreement. *See also Coffman v. Hayes,* 259 Md. 708, 270 A.2d 808 (1970), where the wife was allowed to recover arrearages for child support and medical payments as provided in the separation agreement. Although the agreement

had been incorporated in the divorce decree, the arrearages occurred after the separation agreement but prior to the decree. 259 Md. at 713 n. 2, 270 A.2d at 811.

In our view, the cases from other jurisdictions as well as the varous treatises concerning the doctrine of merger, as discussed hereinabove at length, are very persuasive. On the basis of such authority, we hold that where the parties intend a separation agreement to be incorporated but not merged in the divorce decree, the agreement remains a separate, enforceable contract and is not superseded by the decree. In the case *sub judice,* the agreement expressly provided that it was to be incorporated but not merged in the decree. The decree approved the agreement as a whole and made it a part of the decree as if it were *fully* set forth, thus approving the non-merger clause. Accordingly, the agreement remained an independent contract which in some instances could be attacked separately from the decree and thus the trial judge erred in granting the motion to strike on the basis that the requirements of Md. Rule 625 had not been met.

### (2)

It has been stated that:

"Where there is a valid bilateral divorce — the divorce court having had jurisdiction of the parties and the subject matter — and the court approves the separation agreement, which is then incorporated in the decree, the court will be deemed to have passed on its legality, and subsequent collateral attack on it will not be countenanced. The validity of the agreement is then *res judicata;* and if the decree approving it is that of a sister state, full faith and credit bars collateral attack on the agreement elsewhere. To put it concretely, the husband cannot in such a case evade his obligations under the agreement by claiming that it is illegal

because it was in consideration of divorce, or that it is voidable because it was procured through fraud. Nor can the wife upset the agreement on the ground of misrepresentation or coercion.

On the other hand, where the agreement is not approved by or incorporated in an out-of-state decree, the parties are not estopped, as a matter of law, from later challenging its validity elsewhere. And this despite the fact that it may have been brought to the court's attention and may have been referred to in the findings." 2 A. Lindey, Separation Agreements and Ante-Nuptial Contracts § 31-50 to 51 (1962) (footnotes omitted).

*See also* Annot., 32 A.L.R.2d 1145 (1953). In addition, at least two of our sister jurisdictions have held that where the separation agreement is incorporated in the divorce decree but no merger is intended, the purposes of incorporation are to identify the agreement and to render its validity *res judicata. See McNelis, supra,* 367 P.2d at 632; *Flynn, supra,* 265 P.2d at 866; 24 Am.Jur.2d, *Divorce and Separation* § 908 (1966).

Although the parties in the instant case have not precisely raised the issue of *res judicata,*[6] we believe that in the interests of judicial economy it is appropriate for us to address it as it is dispositive of the matter before us. Maryland Rule 813 a. As Judge Levine stated for this Court in *MPC, Inc. v. Kenny,* 279 Md. 29, 32, 367 A.2d 486, 488-89 (1977):

"The doctrine of res judicata is that a judgment between the same parties and their privies is a final

---

6. Mr. Johnston alluded to this issue in his brief by citing numerous cases to support the proposition that "[i]f the language of the agreement reveals that the intent of the parties was merely to obtain the court's sanction and approval of the agreement, and not to obtain a merger, . . . the incorporation of the agreement into the decree does not preclude a subsequent action based solely upon the agreement." (footnote omitted). He further argues that as the parties here clearly did not intend the agreement to merge, "the purpose of incorporation was solely to identify the agreement."

bar to any other suit upon the *same cause of action,* and is conclusive, not only as to all matters that have been decided in the original suit, but as to all matters which with propriety *could have been litigated* in the first suit. . . ." (emphasis in original) (quoting *Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92 (1961)).

*See also Nicholson v. Unsat. C. & J. Fund Bd.,* 265 Md. 453, 458, 290 A.2d 384, 386 (1972); 2 H. Sachs, Jr., Poe's Pleading and Practice §§ 655, 656 (6th ed. 1970).

In the instant case, the separation agreement was executed "[w]hereas the Husband desire[d] to make provision for the Wife's and children's support and maintenance, and the parties desire[d] to effect a final and permanent settlement of their respective property rights." Both parties were represented by competent counsel at the time of the execution of the agreement as well as during the divorce proceeding. The agreement, consisting of 17 pages and numerous exhibits, was submitted to the court for its approval. By its own terms, it was to be incorporated in the decree only if it were acceptable to the court. Mr. Johnston testified at the divorce hearing and was questioned by the chancellor regarding the separation agreement:

"Q Now, you and your wife have entered into a separation agreement. Is that correct?

A That is correct.

Q And that agreement is dated February 16th, 1973, and you have requested the court to incorporate that agreement into any decree that may be granted in this case. Do you understand what that means?

A Yes, Your Honor.

Q That the agreement will become a part of this decree, and you will be required to comply with the terms and conditions of the agreement. Do you understand that?

A Yes, Your Honor.

       * * *

Q All right, Mr. Johnston, I show you this agreement and ask whether the agreement is signed by you and your wife?

A Yes, Your Honor."

The divorce decree expressly approved the agreement, which was filed as an exhibit, and ordered, at the request of the parties, that it be sealed due to the confidential nature of various matters and facts contained therein.

In our view the property rights of the parties were determined in the divorce proceeding. Moreover, the approval and incorporation of the agreement conclusively established the validity of the agreement and precludes a collateral attack by either party. As stated by the Court of Civil Appeals of Texas, "[u]pon a suit to enforce the terms of the settlement agreement approved [and incorporated] in such judgment, the sanctity and finality of that judgment cannot be collaterally attacked." *Peddicord v. Peddicord,* 522 S.W.2d 266, 267 (Tex. Civ. App. 1975) (application for writ of error refused, no reversible error). There, as here, the property settlement agreement was approved and incorporated in the divorce decree. The wife subsequently filed suit to enforce the terms of the agreement and the husband asserted lack of consideration, failure of consideration, duress in executing the agreement, and lack of mental capacity to contract. *Id.* at 266-67. The Court of Civil Appeals held that summary judgment in favor of the wife had been properly granted as no issues of fact had been raised by the husband. *Id.* at 267.

Numerous jurisdictions have ruled similarly on this issue. *See, e.g., Leach v. Leach,* 172 Cal. App.2d 330, 341 P.2d 758, 759-60 (1959) (where final decree of divorce, incorporating agreement and ordering parties to comply with terms, becomes final judgment, it is not subject to collateral attack); *Whitney v. Heublein,* 145 Conn. 154, 139 A.2d 605, 608 (1958) (where property settlement agreement submitted to

court for approval and full opportunity given for scrutiny and ascertainment of facts, it is unobjectionable); *Sasmore v. Mois,* 154 A.2d 126, 128 (D.C. 1959) (where entire separation agreement was before court and acted upon, such action was *res judicata* as to agreement and all rights of parties thereunder); *Jones v. Jones,* 140 So.2d 318, 320 (Fla. Dist. Ct. App. 1962), *cert. denied,* 146 So.2d 753 (1963) (where divorce decree approved property settlement agreement, subsequent suit by ex-wife to determine property rights was barred); *Richards v. Richards,* 85 Ga. App. 605, 69 S.E.2d 911, 914 (1952) (where property settlement agreement was incorporated in divorce decree, husband could not subsequently go behind the decree and attack its validity nor the validity of the contract made a part thereof); *Parke v. Parke,* 76 Idaho 168, 279 P.2d 631, 633 (1955) (divorce decree incorporating portion of property settlement held to be final and conclusive and doctrine of *res judicata* precluded wife from attempting to vacate portion of decree and agreement); *Davis v. Davis,* 229 Ind. 414, 99 N.E.2d 77, 78 (1951) (where property settlement was submitted to court, read and approved by court, and incorporated in record in divorce action, the court had determined the validity of the contract and all matters regarding property settlement were adjudicated by judgment granting divorce); *Bishop v. Bishop,* 162 S.W.2d 332, 337 (Mo. App. 1942) (where property settlement was received and approved by court, divorce decree was conclusive and husband could not subsequently collaterally attack the agreement as being collusive and against public policy); *Hudson v. Hudson,* 69 N.J. Super. 128, 173 A.2d 721, 724 (1961), *aff'd,* 36 N.J. 549, 178 A.2d 202 (1962) (where agreement was incorporated but not merged, husband could not subsequently attack jurisdiction of court and assert agreement void as against public policy; Alabama decree entitled to full faith and credit and its provisions entitled to be in force as long as decree valid in Alabama); *Galyn v. Schwartz,* 56 N.Y.2d 969, 439 N.E.2d 340, 453 N.Y.S.2d 624 (1982), *modifying,* 77 A.D. 437, 434 N.Y.S.2d 1 (1980) (where separation agreement is incorporated in valid, bilateral foreign decree of divorce, validity of agreement may not be

collaterally attacked; husband's affirmative defense alleging agreement was void on basis of his emotional state and lack of counsel could not be raised); *Pforr v. Pforr,* 227 N.Y.S.2d 728 (1962) (where wife sought to set aside separation agreement and divorce decree on basis of her mental incompetency, it was held judgment was not subject to collateral attack and agreement could not be attacked in this manner as it was ratified and confirmed by divorce decree); *Riggle v. Riggle,* 148 N.E.2d 72, 77 (Ohio App. 1957) (where separation agreement was incorporated in divorce decree, question of collusive character of agreement had been determined; in suit by wife seeking arrearages, husband could not raise collusiveness as a defense); *Gracey v. Gracey,* 201 Tenn. 414, 300 S.W.2d 606, 608 (1957) (where divorce decree approved property settlement except as to payment of $10,000 by wife to husband, which was expressly disapproved, decree was held to be *res judicata* as to issue that wife was not legally bound to pay husband said sum; decree adjudicated property rights and interests of parties); *White v. White,* 380 S.W.2d 672, 678 (Tex. Civ. App. 1964) (application for writ of error refused, no reversible error) (where in divorce action husband was awarded annuity as his sole property, wife was precluded by doctrine of *res judicata* from being granted any interest therein; issue had been litigated and decided in divorce action); *Wallihan v. Hughes,* 196 Va. 117, 82 S.E.2d 553, 561-62 (when parties are before court of competent jurisdiction and separation agreement is approved, confirmed and decreed upon, its validity is by that judgment rendered *res judicata* between the parties).

Although there are cases which at first glance appear to stand for the proposition that a divorce decree which incorporates a property settlement agreement does not conclusively establish the validity of the agreement, a close review of such cases reveals that the courts based their decisions on the conclusion that the requirements of *res judicata* simply had not been met. For example, in *Looper v. Looper,* 222 Cal. App.2d 247, 34 Cal. Rptr. 912 (1963), the divorce

proceeding was treated as a default action. Although the complaint filed included a prayer that the agreement be approved and incorporated in the decree, the agreement was not approved; instead, it was expressly set aside and vacated. In a subsequent action to quiet title to certain community property, the court observed that where a default judgment is entered, the plaintiff is entitled only to the relief demanded in the complaint. Because the complaint in the divorce action did not mention the community property, the divorce court had exceeded its authority in awarding the property to the wife and thus the decree was not *res judicata* on this issue. The court stated in pertinent part, "where relief is given beyond the scope asked for, it is a nullity and may be attacked collaterally or its effects avoided under the doctrine that it is not *res judicata.*" *Id.* at 917. In the instant case, there was not a default judgment entered and the court did not exceed its authority. The court was expressly asked to approve and incorporate the separation agreement. The relief granted was clearly not beyond that sought. *See also Queen v. Queen,* 44 Cal. App.2d 475, 112 P.2d 755 (1941), where the court held the divorce decree did not conclusively establish the validity of the property settlement agreement as the terms of the agreement were not sufficiently identified in the decree. Nevertheless, the court recognized that:

> "A property settlement, although merely referred to in the decree as such, may, under circumstances not necessary to enumerate herein, become res judicata, but it must be sufficiently certain and definite or a reasonable means of ascertaining its terms must be available from the pleadings or evidence before it may be enforced and constitute an estoppel between the parties." 112 P.2d at 757 (numerous citations omitted).

Colorado courts have held that a property settlement agreement does not merge in the divorce decree unless it is incorporated therein. Where there is no merger, the agreement remains independent and mere approval of the

agreement in the decree does not conclusively establish its validity. *See, e.g., Murphy v. Murphy,* 138 Colo. 516, 335 P.2d 280 (1959) (en banc); *Williamson v. Wilmore,* 481 P.2d 735 (Colo.Ct. App. 1971). As discussed extensively in section (1) herein, in the instant case, the agreement was approved and incorporated in the decree although by its own terms it did not merge. The terms of the agreement were clearly before the court and ruled upon.

In *Sande v. Sande,* 83 Idaho 233, 360 P.2d 998 (1961), the divorce decree confirmed the property settlement agreement and the wife subsequently filed to vacate the agreement and decree on the basis she was induced to enter the agreement by fraud and coercion. The court concluded the issue of the validity of the agreement had not previously been litigated, stating in pertinent part:

> "[W]here such an agreement is not binding on the wife, or is voidable by her, and the divorce decree was taken against her by default, and the issues affecting the validity and binding force of the agreement were not litigated in the divorce proceedings, the decree therein is not a bar to the wife's independent action for relief from the agreement, and the decree may be modified or set aside to the extent necessary to provide proper relief." 360 P.2d at 1004.

*See also Taysom v. Taysom,* 82 Idaho 58, 349 P.2d 556, 559 (1960), where it was held that when the divorce court merely mentioned the parties had settled their property rights and the agreement was not incorporated in the decree, it did not follow that the court had approved or disapproved the agreement. Accordingly, the issue of its validity was not *res judicata* in a subsequent action for trespass.

In *Gardine v. Cottey,* 360 Mo. 681, 230 S.W.2d 731 (1950) (en banc), the wife was allowed to subsequently attack the property settlement agreement on the basis it was procured, *inter alia,* by fraud and misrepresentation. The court rejected the defendant's argument that the validity of the

agreement was adjudicated in the divorce action and operated as *res judicata* stating, "[t]here is no merit in this last contention since the validity of the contract and the subsequent deed were not pleaded or in issue in the divorce case." 230 S.W.2d at 738.

Similarly, in *Delp v. Schiel,* 223 Or. 267, 354 P.2d 299, 303 (1960), it was held that where the divorce court made no determination of property rights and never approved or confirmed the agreement, the parties were not precluded from filing a subsequent suit to determine the property rights. The divorce decree was *res judicata* only as to matters therein.

In *Lebeau v. Lebeau,* 258 Pa. Super. 519, 393 A.2d 480, 483 (1978), the court concluded that a suit for the sale and division of proceeds was a separate and distinct claim from a controversy over a domestic support order and thus the doctrine of *res judicata* was not applicable. The validity of the Texas decree had simply not yet been litigated so the party was not collaterally estopped from asserting its invalidity.

Finally, in *Yeo v. Yeo,* 581 S.W.2d 734 (Tex. Civ. App. 1979) (application for writ of error refused, no reversible error), the divorce decree incorporated, confirmed and ratified the property settlement agreement. Because the agreement was silent as to the husband's military retirement benefits, the court held that a subsequent suit by the wife seeking partition of such benefits was not a collateral attack on the decree. The court concluded that, "a partition of community property not disposed of in the prior divorce decree is not barred by the doctrine of *res judicata." Id.* at 736.

For the reasons stated herein, we conclude that where, as in the instant case, the property settlement agreement is presented to the court for approval and is approved by the court and incorporated in the divorce decree, the validity of the agreement is conclusively established and the doctrine of *res judicata* operates so as to preclude a collateral attack on the agreement.

In accordance with the above, we hold that Mrs. Johnston's motion to strike was properly granted by the chancellor although for reasons different from those assigned by the Court of Special Appeals.

> *Judgment of Court of Special Appeals affirmed; costs to be paid by appellant.*