## PEGGY RYAN HAMILOS v. JAMES C. HAMILOS

[No. 154, September Term, 1982.]

*Decided September 14, 1983.*

*Motion for reconsideration filed on October 14, 1983; denied on October 21, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Joseph F. Shanahan,* with whom were *Thomas J. Beetel* and *Richard T. Cremin* on the brief, for appellant.

*Thomas D. Washburne,* with whom were *William E. Maseth* and *Ober, Grimes & Shriver* on the brief, for appellee.

COUCH, J., delivered the opinion of the Court.

In this case we are asked, once again, to determine whether a voluntary separation and property settlement agreement approved and incorporated but not merged in a divorce decree may be collaterally attacked.[1] Alternatively, Mrs. Hamilos argues that the decree should be modified pursuant to Maryland Rule 625 a [2] as the agreement was obtained by fraud and the decree was obtained through irregularity and mistake. For reasons discussed herein, we hold that the agreement may not be collaterally attacked as its validity was conclusively established by the decree which operates as *res judicata.* In addition, we hold that the

---

1. This issue was raised in Johnston v. Johnston, 297 Md. 48, 465 A.2d 436 (1983), and argued the same date. Upon motion by the parties, the Court of Special Appeals consolidated the two cases. We were not requested to do so and have thus treated them separately.

2. Md. Rule 625 a states:

"For a period of thirty days after the entry of a judgment, or thereafter pursuant to motion filed within such period, the court shall have revisory power and control over such judgment. After the expiration of such period the court shall have revisory power and control over such judgment, only in case of fraud, mistake or irregularity."

requirements of Rule 625 a have not been met. Accordingly, we shall affirm the Court of Special Appeals. *Hamilos v. Hamilos,* 52 Md. App. 488, 450 A.2d 1316 (1982).

The parties hereto were married in April, 1960, and separated in September, 1978. Of the three children produced by the marriage, one is still a minor. In March, 1979, Mrs. Hamilos filed a "Bill of Complaint for Divorce A Mensa Et Thoro" in the Circuit Court for Baltimore City. In December, 1979, the parties executed a "Voluntary Separation and Property Settlement Agreement" as "[i]t [wa]s the mutual desire of the parties to formalize said voluntary separation and to settle all questions of custody of their children, maintenance and support, alimony, counsel fees, their respective rights in the property or estate of the other, and in property owned by them jointly or as tenants by the entireties, and all other matters of every kind and character arising from their marital relationship." The agreement provided, *inter alia,* that the husband was to have "custody of the minor children of the parties with reasonable rights of visitation to [the] wife. . . ." Paragraph 4 of the agreement provided for the support and maintenance of the wife as follows:

> "Commencing one week from the date of this agreement and each week thereafter until the death or remarriage of the wife or until two weeks following husband's death whichever event first occurs, husband shall pay the sum of Two Hundred Seventy-five Dollars ($275.00) which sum shall be fixed and unchangeable for any reason whatever. Wife accepts this payment in lieu of any other provision or allowance for her support and maintenance. The parties hereby expressly waive the right ever hereafter to have any court change or make a different provision for the support and maintenance of wife, and they further expressly covenant and agree that under no circumstances whatever will either of them hereafter apply to any court for an increase or decrease in the amount or for a modification of the terms of such support and maintenance."

Paragraph 20 of the agreement provided:

"The parties hereto agree that the provisions of this agreement settling the rights of the parties shall be submitted to any court taking jurisdiction over any action filed by either party for annulment, divorce or permanent alimony, and the *provisions of this agreement shall be incorporated in and survive any judgment, order or decree* entered in any such action in lieu of any other provisions relating to alimony, attorneys' fees or the parties' maintenance and support. In the event any judgment, order or decree does not incorporate the provisions of this agreement and contains provisions inconsistent with or conflicting with the terms of this agreement, the parties hereto do hereby waive any such other inconsistent or different provisions which may be made for them by the court in such judgment, order or decree and do hereby agree to continue to accept the provisions herein made for them and agreed to, in lieu of and in full satisfaction of any provisions made for them as a result of any such judicial proceedings. It is further agreed that *regardless of whether or not this agreement or any part thereof is incorporated in any order or decree, the same shall not be merged in said order or decree, but shall survive such order or decree.* Should either party default under the terms of any paragraph of this agreement, the defaulting party agrees to indemnify the non-defaulting party for any loss or damage sustained as a result of said default. The provisions of this agreement, are *not* subject to any court modification." (Emphasis supplied).

In January, 1980, Mrs. Hamilos filed an "Amended Bill of Complaint for Divorce A Vinculo Matrimonii" and prayed "[t]hat the Voluntary Separation and Property Settlement Agreement between the parties dated December 28, 1979, be made a part of any Decree of this Court." Following a

hearing before a master, the parties were divorced *a vinculo matrimonii* on March 27, 1980. The decree stated in pertinent part:

> "AND IT IS FURTHER ORDERED, DECREED AND ADJUDGED that the pertinent terms of the Agreement and Addendum thereto, by and between the parties to this proceeding, hereto dated December 28, 1979, and filed with the Testimony in this cause of action be, and that *they are hereby ratified and approved and made a part hereof, as if fully set forth herein. . . .*" (Emphasis added).

Seventeen months later, on August 31, 1981, Mrs. Hamilos filed a "Petition to Set Aside Divorce Decree and Voluntary Separation and Property Settlement Agreement and Addendum to Same" on the basis that she "was not possessed of sufficient mental capacity to enter in to said Agreement, or knowingly participate in the action for divorce" due to the use of alcohol and prescribed drugs. She further alleged that the agreement was without consideration; that it was obtained by coercion, duress, and/or fraud on the part of Mr. Hamilos; and that the agreement and divorce decree were obtained through irregularity or mistake. The petition prayed that both the decree and agreement be set aside. The petition was subsequently amended wherein Mrs. Hamilos sought a declaratory judgment regarding alimony payments and the marital property in addition to having the agreement set aside.

Mr. Hamilos responded by filing a demurrer which, subsequent to a hearing, was sustained by the chancellor (Dorf, J.). The chancellor ruled that Mrs. Hamilos was in effect seeking to set aside an enrolled decree and, accordingly, applied Maryland Rule 625, concluding:

> "I do not feel that under the law it has been shown that there is any fraud under the case law or that there has been any fraud or irregularity under the case law vis-a-vis §625. I feel, therefore, the demurrer should be sustained, and I will, in effect, sustain

> . the demurrer to the motion or petition to set aside
> the divorce decree and voluntary separation, and
> property settlement agreement addendum."

The Court of Special Appeals agreed that Rule 625 was applicable and affirmed the chancellor as "Mrs. Hamilos' assertions . . . do not constitute fraud, mistake or irregularity within the meaning of Rule 625 a." *Hamilos, supra,* 52 Md. App. at 497, 450 A.2d at 1322. We granted certiorari to consider an issue of public importance.

### (1)

The threshold issue, which neither the chancellor nor the intermediate appellate court discussed, is whether the separation agreement merged in the decree so as to be superseded by the decree. For reasons discussed in *Johnston v. Johnston,* 297 Md. 48, 465 A.2d 436 (1983), we hold that the agreement did not merge in the decree but remained a separate, enforceable contract. It is clear that the parties intended that there be no merger as the agreement expressly provided that it "shall not be merged in said order or decree, but shall survive such order or decree." The decree ratified, approved and incorporated the agreement and its addendum as if it were fully set forth, thus approving the non-merger clause. As we stated in *Johnston,* "where, as in the instant case, the agreement provides that it shall be *incorporated but not merged* in the decree, it is patent that the parties did not intend merger and the agreement survives as a separate and independent contractual arrangement between the parties." *Id.* at 56, 465 A.2d at 440 (emphasis in original) (footnote omitted).

Furthermore, as discussed in *Johnston,* the doctrine of *res judicata* precludes Mrs. Hamilos from collaterally attacking the agreement as its validity was established in the divorce proceeding. The parties intended the agreement to settle *all* matters relating to their marriage. Both parties were represented by competent counsel during the negotiation and execution of the agreement as well as throughout the divorce

proceeding. The agreement and its addendum were before the court and Mrs. Hamilos expressly asked that said contracts be made part of the decree. In our view, the ratification, approval and incorporation of the agreement conclusively established the validity of the agreement so as to preclude a collateral attack by either party. For a discussion of cases from other jurisdictions supporting this proposition, see *Johnston, supra,* at 61-63, 465 A.2d at 443-44.

(2)

The second and final issue is whether Mrs. Hamilos' allegations pertaining to fraud, mistake and irregularity are sufficient to withstand the demurrer filed by Mr. Hamilos. We shall affirm the Court of Special Appeals on this issue.

It is well established that:

> "[A]n enrolled decree will not be vacated even though obtained by the use of forged documents, perjured testimony, or any other frauds which are *'intrinsic'* to the trial of the case itself. Underlying this long settled rule is the principle that, once parties have had the opportunity to present before a court a matter for investigation and determination, and once the decision has been rendered and the litigants, if they so choose, have exhausted every means of reviewing it, the public policy of this State demands that there be an end to that litigation." *Schwartz v. Merchants Mort. Co.,* 272 Md. 305, 308, 322 A.2d 544, 546 (1974).

Moreover, "[t]his policy favoring finality and conclusiveness can be outweighed only by a showing 'that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy.'" *Id.* at 308-09, 322 A.2d 546 (citation omitted). In *Schwartz,* we also discussed examples of *"extrinsic"* fraud:

> "Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side, — these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing." *Id.* at 309, 322 A.2d at 547 (quoting *United States v. Throckmorton,* 98 U.S. 61, 95, 25 L.Ed. 93 (1878)).

In the instant case, Mrs. Hamilos asserts, *inter alia,* that:

> "[Mr. Hamilos] took undo advantage of their confidential relationship, continued to have sexual relations with [her] after their separation and made continuing expressions of love and affection and promises of reconciliation, all for the purpose of inducing and manipulating [her] to accept a fraudulent settlement and divorce. That [he] further manipulated [her] into executing an Agreement and obtaining a Divorce by causing his company, of which he was President and a 50% stockholder, to file a $3 million dollar law suit against her, which was dismissed voluntarily as a condition of her acceptance of said Agreement and obtaining a divorce. Her signing of the Agreement was also due to [his] undue influence."

Assuming the truth of these allegations for purposes of the ruling on the demurrer, they simply do not establish the *"extrinsic"* type of fraud encompassed by Rule 625 a. Accord-

ingly, we hold that the chancellor was correct in sustaining the demurrer.

As to Mrs. Hamilos' allegations of mistake and irregularity, we agree with the Court of Special Appeals that there was "no jurisdictional mistake" or "a defect in process or proceeding." We adopt the reasoning of Chief Judge Gilbert on these two issues. *See Hamilos, supra,* 52 Md. App. at 496-98, 450 A.2d at 1321-22.

In accordance with the above, we hold that Mr. Hamilos' demurrer was properly granted by the chancellor.

> *Judgment of Court of Special Appeals affirmed; costs to be paid by appellant.*